### Gipps Brewing Company, Appellee, v. Harry G. Wasson et al., Appellants.

### Gen. No. 6,017.

1.   PLEADING, § 258*—*when proper to allow amendment.*   Where an injunction or a receiver is obtained upon a sworn bill, permission should not be given to make material change in its allegations without a showing of due reasons for making such change, but no such showing is necessary to authorize the amendment of the bill as a mere pleading.

2.   PLEADING, § 258*—*when proper to allow filing of amended bill.*   In a suit to foreclose a trust deed given to secure a note, the bill claimed that complainant owned the note and was sworn to and contained a prayer for a receiver, but no receiver was sought or obtained.   Leave was granted to file an amended bill which was not under oath, and which differed mainly from the original bill in that it set out also the transactions by which complainant acquired the ownership.   *Held*, that it was not error to permit the amended bill to be filed.

3.   PLEADING, § 273*—*when original replication stands as answer to amended bill.*   An order permitting the replication to the original answer to be refiled as a replication to the answer to the amended bill is equivalent to an order that the original replication stand to the amended bill, and has this effect, even though the clerk does not place a new file mark on the replication.

4.   PLEADING, § 24*—*when filing of replication waived.*   The objection that the replication to the answer to the original bill had not been refiled as a replication to the answer to the amended bill, as had been allowed by the court, and that therefore the case should have been heard on the bill and answer only, is waived where proofs are introduced by both sides after the order permitting the refiling.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Gipps Brewing Co. v. Wasson, 193 Ill. App. 158.

5.  JUDGMENT, § 362*—*when recitals in decree conclusive.* Where the decree recites that the case was heard on the amended bill, the answer, the replication to such answer and the proofs, these recitals are conclusive that there was a replication to the answer to the amended bill.

6.  PRINCIPAL AND AGENT, § 232*—*what evidence admissible to establish agency.* In a suit to foreclose a trust deed given to secure a third person in a transaction in which it is claimed he acted as agent of complainant, where the existence of the agency is denied by defendant, evidence of conversations between the third person and officers of the complainant, held when defendant was not present, is competent to show the third person's agency in the transaction, where the want of notice of such agency did not injuriously affect defendant's rights.

7.  PRINCIPAL AND AGENT, § 180*—*when third person's rights not injuriously affected by want of notice of agency.* In a suit to foreclose a trust deed given to secure a third person in a transaction in which it is claimed that he acted as agent for complainant, evidence examined and *held* to show that defendant's rights were not injuriously affected by want of notice of the agency.

8.  PRINICIPAL AND AGENT, § 8*—*when evidence sufficient to show third person's knowledge of agency.* In a suit to foreclose a trust deed given to secure a note claimed to have been given to secure a third person in a transaction in which he acted as agent of complainant, evidence examined and *held* to show that defendant had notice of the agency.

9.  PRINCIPAL AND AGENT, § 8*—*when evidence sufficient to establish relation.* In a suit to foreclose a trust deed given to secure a third person, evidence examined and *held* to show that such third person acted as agent for complainant in the transaction in which he received the deed.

10.  BILLS AND NOTES, § 307*—*when right of payment and subrogation arise.* In a suit to foreclose a trust deed, it appeared that the deed and a note were given by the grantor to secure one who signed another note for him; that the latter note becoming due and not being paid by the signer was paid by the complainant, a company of which the signer was an officer and director; that in the transaction as to the notes and deed, the signer acted as officer and agent of the complainant, in furtherance of its business, with the approval of its directors and with the understanding that the debt incurred by his signing the note was the debt of the complainant. *Held*, that complainant had a right to pay the note and by so doing was subrogated to the signer's title to the collateral.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

11. Mortgages, § 109*—*when junior mortgagee subrogated to rights of senior incumbrancer.* A junior mortgagee who pays off a senior incumbrancer becomes subrogated to the rights of the senior incumbrancer, even though the making of such payment was not necessary to protect his rights.

Niehaus, J., took no part in this decision.

Appeal from the Circuit Court of Peoria county; the Hon. John M. Niehaus, Judge, presiding. Heard in this court at the October term, 1914. Affirmed. Opinion filed January 6, 1915. Rehearing denied April 15, 1915. *Certiorari* denied by Supreme Court (making opinion final).

I. R. Wasson, for appellant.

George J. Jochem, for appellee.

Mr. Justice Dibell delivered the opinion of the court.

The Gipps Brewing Company, hereinafter called the company, filed a bill in equity against Harry G. Wasson and others to foreclose two trust deeds upon the Hotel Wassonia property in the village of Rome in Peoria county, the first of which trust deeds was dated August 5, 1911, and secured a note of that date for the principal sum of $1,900, due in one year, with interest at seven per cent. per annum after maturity, and the other trust deed was dated November 13, 1912, and secured a note of that date for the principal sum of $641.05, due in six months, with interest at seven per cent. per annum from date, each of which notes was signed by Harry G. Wasson and payable to his order and by him indorsed in blank. Subsequent incumbrances and holders of supposed clouds on the title were also defendants, and the decree affected their rights, but that decree is not questioned on those subjects and those details need not be stated. Wasson answered the bill and a replication was filed to said answer. The cause was referred to the master to take and report the proofs and his conclusions, and

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

he took the proofs at various dates. After the hearing of proofs had begun, the company filed an amended bill. After a demurrer thereto was overruled, Wasson answered. On motion of the complainant, leave was given that the replication to the original answer be refiled as a replication to the answer to the amended bill, but it seems that the clerk did not place a new file mark thereon. Further proofs were heard from time to time by the master, and a report was made in favor of complainant, objections thereto by Wasson were overruled and were ordered to stand as exceptions in the court, and were there overruled, and complainant had a decree of foreclosure of both trust deeds, from which Wasson appeals. It is conceded that the decree was correct in foreclosing the second trust deed. The contention relates to the first trust deed.

Appellant contends that the amended bill departed from the allegations of the original bill and that the court should not have permitted it to be filed without a showing why the facts stated in the amended bill were not set out in the original bill. We are. of opinion that his question was not raised at the proper time nor in the proper way in the court below. Where an injunction or a receiver is obtained upon a sworn bill, the court should not permit its allegations to be materially changed without a showing of due reasons for making such a change, but no such showing is necessary to authorize the amendment of the bill as a mere pleading. The original bill here was sworn to and there was a prayer for a receiver, but no receiver was sought or obtained. The amended bill was not under oath. The main difference between the two pleadings as to the note for $1,900 was that the original bill claimed that the company owned that note, while the amended bill set out also the transactions by which it acquired that ownership. We find no error in permitting the amended bill to be filed.

Appellant contends that as the replication was not refiled the case should have been heard upon bill and answer only, and the answer should have been taken as true, and no proofs should have been received. The order permitting the replication to be refiled to the answer to the amended bill was equivalent to an order that the original replication stand to the answer to the amended bill. Moreover, proofs were thereafter introduced, not only by the company but also by Wasson, and as the case was not heard upon bill and answer, but upon the pleadings and the evidence, the filing of a replication would be held waived. *Piot v. Davis,* 241 Ill. 434. Moreover, the decree recites that the case was heard on the amended bill, the answer, the replication to such answer and the proofs. These recitals are conclusive that there was a replication to the answer to the amended bill. *Brown v. Miner, Frost & Hubbard,* 128 Ill. 148; *Meath v. Watson,* 76 Ill. App. 516.

The main contention of appellant is that the company did not own this note for $1,900 and had no connection therewith, and that what it paid, it paid as a mere volunteer and interloper in business which did not concern it, and therefore it cannot enforce payment of it, reliance being had upon the principles laid down in *Fuller v. John S. Davis' Sons,* 184 Ill. 505, where it was held that the doctrine of subrogation has no application where there is no relation of principal and security or guarantor or other relation which entitles one party to succeed to the rights of another; to which may be added, *Home Savings Bank v. Bierstadt,* 168 Ill. 618, where it was held that, if the demand of a creditor is paid by the money of a third person, not himself a creditor, without any agreement that the security shall be kept alive for the benefit of such third party, the demand is absolutely extinguished. This position requires an examination of the evidence.

The proofs for complainant tend to establish the

following facts: The company makes beer in Peoria and sells it there and in that vicinity. Wasson owned the real estate in question and began building a hotel thereon, in which he intended also to operate a dram-shop. The officers of the company were Willis H. Ballance, Sr., hereinafter called Ballance, who was president until his death, his son, Willis H. Ballance, Jr., who became president at the death of Ballance, and Charles S. Cockle, who was treasurer and some of the time also secretary, and these three were the directors of the company, and when Ballance died his son and Cockle became the executors and trustees under the will of Ballance. In 1910, Wasson was needing aid to obtain money to complete his hotel and Ballance signed a note for $1,000 with Wasson at the First National Bank of Chillicothe, Illinois, hereinafter called the bank, and Wasson thereafter bought a part of his beer from the company. That note became due and was unpaid. There was a mortgage, given by Wasson for another debt, resting upon the hotel property and other land. Wasson ascertained that he could secure a release of the hotel property from that mortgage if he paid $500 thereon. He represented to Ballance that if he could get a loan of $1,900 from the bank, he could pay off the $1,000 note, pay $500 on his other indebtedness and secure a release of the hotel property from that mortgage and, if Ballance would sign the note for $1,900 for him at the bank, he would give Ballance a note for $1,900 and secure it by a trust deed on the hotel property. Ballance reported this offer to the other directors of the company and advised them that, in his opinion, he could arrange for the exclusive sale of the company's beer at the hotel, and that he thought it advisable to do this. The other directors at first opposed and afterwards consented. Ballance signed the note for $1,900 to the bank and thereby enabled Wasson to pay off the previous $1,000 note and $500 on his prior incumbrance, and that incumbrance was

released as to the hotel property, and Wasson executed to Ballance a note for $1,900 and secured it by the first of the trust deeds herein mentioned. It is the testimony of Ballance, Jr., and Cockle that this was done by Ballance, not in his own interest, but as the president of the company and for the purpose of increasing and holding its business, and that the directors of the company authorized Ballance to sign this note to the bank and always considered the indebtedness to the bank as the obligation of the company, and not of Ballance, individually, and that what Ballance did was as the president and agent of the company. Ballance died. The note at the bank came due. The company paid it, and the bank indorsed its note in blank to the Ballance estate and delivered it to Ballance, Jr. and Cockle, who were both the executors and trustees of the will of Ballance and also the remaining directors of the company. The trust deed and note of Wasson to Ballance for $1,900 had originally been placed in the hands of Rousseau to hold them as trustee for the parties, but afterwards they came into the possession of the company.

Wasson did not introduce any substantial proof to the contrary, but he contends that this proof of conversations between Ballance and the other directors, when Wasson was absent, was incompetent, and that, with that evidence disregarded, there is no proof in this record that Ballance was acting as the agent of the company in what he did or that the company had any interest in his acts. It was held in *Rice & Bullen Malting Co. v. International Bank*, 185 Ill. 422, where a similar agency was proven by conversations in the absence of the opposite party, that the agency could be created verbally and that proof of those conversations was competent, and it was there said:

"It is not essential that an agency should be created in the presence of each party with whom the agent deals on behalf of his principal, nor that the agency

should be made known to a party whose rights are not injuriously affected by the want of such notice.''

The rights of Wasson were not injuriously affected by the want of notice that Ballance was acting for the company. It is true that he testified that he told Ballance that he did not want the company to have anything to do with this transaction, and that Ballance told him that was not necessary. We are of opinion, however, that it is clear from the whole testimony of Wasson that he knew that Ballance was becoming his guarantor in order to induce Wasson to buy the company's beer. Other beer companies had offered to assist him financially, if he would become the purchaser of their beer exclusively, and he gives no other reason why Ballance should have given him this important financial assistance. There is evidence that Wasson thereupon agreed verbally to buy all his beer of the company, which evidence he contradicted.

There are two reasons why the company had a right to pay the note to the bank and be subrogated to the title to the collateral security of this $1,900 note and the trust deed. We regard it as clearly established that Ballance did all this business as the president and agent of the brewing company and in furtherance of its business and with the approval of its directors, and that it was understood between Ballance and the directors that this $1,900 note which he signed at the bank with Wasson should be the indebtedness of the company. In equity, therefore, the company owned and could enforce these collateral securities. Further, the company had taken this second trust deed, securing $641.05, which was later in date than the $1,900 trust deed. It is conceded that this later note and trust deed was given to secure payment of a balance due to the company from Wasson for beer. In *Illinois Nat. Bank v. Trustees of Schools,* 211 Ill. 500, the following is quoted with approval from Jones on Mortgages:

"A mortgagee who has paid a prior mortgage or other encumbrance upon the land is entitled to be paid this amount, as well as his own mortgage, when the mortgagor comes to redeem. In addition to the rights the mortgagee had before, he is subrogated to those which were a charge upon the land in the hands of the prior encumbrancer whom he had paid, whether such incumbrance is a mortgage, a judgment or a rent charge."

Appellant seems to construe the language which precedes the foregoing quotation as meaning that before a subsequent mortgagee, who has paid off a prior incumbrance, can be subrogated thereto, he must have been compelled to pay it for his own protection; and he argues that the proof here shows that this hotel property was worth very much more than these two incumbrances secured, and therefore the company was not compelled to pay this debt for $1,900, and therefore it cannot be subrogated. In such prior language, however, the court also said, on the same page, that the junior mortgagee had the right, not only under section 18 of chapter 77 of the Revised Statutes (J. & A. ¶ 6764), but also under the general principles of equity, to pay off the senior mortgage and become subrogated to the rights of the senior mortgagee. Moreover, this court held in *Lidster v. Poole,* 122 Ill. App. 227, by Farmer, J., that in such cases the payments by the junior mortgagee cannot be said to be optional. We are of opinion that for both the reasons above stated, the company properly acquired the right to enforce the trust deed securing this note for $1,900. The decree is therefore affirmed.

*Affirmed.*

MR. JUSTICE NIEHAUS took no part in this decision.