MARY J. CRAIG et al.

*v.*

DEBORAH SMITH et al.

[Decided July 13th, 1915.]

1. As to unpaid taxes, a purchaser of land at judicial sale can be protected by deduction from the purchase-money.

2. Until the birth of issue the husband of a woman owning land has no estate by the curtesy initiate.

3. Under Partition act of 1846 (*3 Comp. Stat. 1910 p. 3910* § *44*), providing that the court of chancery shall have power to decree the sale of land for partition, the inchoate rights of dower of wives of tenants in common made parties to the suit, as well as any rights of the husbands of the tenants in common, who were also parties, are barred by a sale made under an order requiring the master to execute a conveyance operating as a bar to the rights of all persons.

4. Where a master appointed to sell land for partition failed to advertise and give notice of the sale in the county where part of the lands were situated, the purchaser cannot be required to comply with his bid, the power of the master being only that obtained by strict compliance with the statute.

38

5. Act of 1906 (*4 Comp. Stat. 1910 p. 4686* § *35*) gives a purchaser of land at judicial sale the right to object to any defect which would render title unmarketable.

6. Act February 16th, 1891 (*P. L. 1891 p. 24*), provides that sales of land made by virtue of an order of court shall be confirmed notwithstanding irregularity in the publication of the advertisement, provided the court be satisfied by affidavit that the defect or irregularity was not injurious to the parties in interest. A tract of land ordered sold for partition was located in two counties, but advertisement was published in only one county. The portion lying in the other county consisted of about one acre which was wholly occupied by a canal.—*Held*, that act of 1891 was not repealed because not included in the compiled statutes, and hence the master who sold the land under the defective advertisement could petition under the act to require the purchaser to complete his purchase, the defect in advertisement not being prejudicial.

On application by special master to compel purchaser at public sale to carry out contract of sale.

*Mr. Joseph M. Roseberry,* for the petitioner.

*Mr. Carl Vogt,* for the purchaser.

EMERY, V. C.

By a final decree in this suit for partition the special master was directed to sell the lands at public sale "and in all respects conduct the same according to the provisions of the statute in such case made and provided." The lands to be sold were described in the decree as "situate in the township of Mt. Olive, in the county of Morris and State of New Jersey," and as containing one hundred and eighty-three and twenty-three hundredths acres, a particular description by metes and bounds being given. The description of the lands in the decree followed that of the bill both as to location and contents. The master advertised the sale by advertisements duly put up in Morris county. No advertisements or notices were made or put up in Warren county. In point of fact, part of the tract as described, containing about one acre, lies in the county of Warren, the boundary line between the counties crossing a portion of the farm. All of the tract, however, which is located in the county of Warren is occupied by the canal of the Morris Canal Com-

pany. The master's advertisements of sale contained no refer-
ence to this occupation of part of the lands by the canal com-
pany, or to the location of any part of the lands in Warren
county.

By the conditions of sale, which were read before the sale, it
was provided that the property described in the advertisement
annexed

"will be sold subject to the confirmation by the court of chancery and
subject to the right of way of Morris & Essex R. R. Co. and of Morris
Canal and Banking Company and their lessees, and any right which
they may have therein."

These conditions were signed by the special master and the
property was struck off to respondent, John R. Mooney, as the
purchaser, for $1,600. Mooney signed the conditions of sale, "I
have bid off the property above described for the sum of $1,600
and agree to comply with the conditions of sale." He also paid
to the master $1,000. The sale of the lands as directed in the
decree was reported by the master, to which was annexed the re-
quired oath that the property was sold by him at the highest
and best price the same would then bring in cash, and on the
13th day of August, 1914, the sale was confirmed by order of the
court and the master directed to deliver a deed to the purchaser
upon his complying with the conditions of sale.

The purchaser failed to complete the purchase and applied by
petition to be relieved from his bid upon the grounds (1) that
the title was defective by reason of the failure to put up adver-
tisements and notices of sale in Warren county; (2) because
certain inchoate rights of dower and certain estates by the
curtesy initiate, which existed in the lands on filing the bill,
were not by the decree expressly directed to be sold, and these
estates and interests are therefore not cut off by the decree, and
(3) that there are unpaid taxes which are on the property and
of which no notice was given at the sale.

At a hearing upon the affidavits filed, this application was
denied without prejudice. The master then filed a petition
against the purchaser, to compel performance of the contract of
sale, upon which the purchaser by answer raises the objections

of defective title, under the sale, by reason of the failure to advertise the sale in Warren county, and also by reason of the master's making the sale at Hackettstown, Warren county. He also claims that he intended and expected to buy the whole tract of one hundred and eighty-three and twenty-three hundredths acres, without deductions "except as mentioned in the conditions of sale," and that he would not have bought the lands if he had not supposed he was buying the part of the lands in Warren county as well as in Morris county. The answer does not renew the objections of defective title by reason of the inchoate estates of dower and curtesy initiate or of unpaid taxes. These objections are, however, raised in the brief for the purchaser, as is also the additional objection that under the act of 1906 (*P. L. 1906 p. 269; 4 Comp. Stat. p. 4686* § *35*) the exception from the sale of the rights of the canal company and railroad company should have been included in the advertisements and notices as well as in the conditions.

As to any unpaid taxes, the purchaser can be protected by a deduction from the purchase-money, and under the law of 1906, this is then no ground for relief from his bid.

The objection as to the failure of the final decree to direct specially the sale of the inchoate estates in dower, or of the estates by the curtesy initiate, and of the advertisements and notices to specify these inchoate or initiate estates as sold is not, in my opinion, well founded. All of the supposed holders of these estates were parties defendant to the suit, were duly brought into court and decree *pro confesso* was duly taken against all of them in the interlocutory decree which directed a reference to a master to report as to the rights of all the parties. The master in settling the rights reported that the defendants, who were wives of the tenants in common, were entitled to inchoate estates in dower in the shares to which their husbands were respectively entitled; but did not report that the husbands of five of the tenants in common (and who were also defendants in the suit) were entitled to any interest in the lands. The evidence taken before the master shows nothing as to the birth of any children from these marriages, and therefore upon the record, which is all that the purchaser is concerned with, so

far as the present object goes, none of them had apparently any interest in the lands. *Doremus* v. *Paterson* (*Vice-Chancellor Stevens, 1904*), *69 N. J. Eq. 188.* The master's report was made at the time and place fixed by the reference to him, and no objections having been made before or at that time, the report was confirmed by the final decree. The final decree also directed a sale of the lands under the twenty-sixth section of the Partition act of 1846 (*Rev. Stat. p. 109*), which is continued in the forty-fourth section of the Partition act of 1898. *P. L. 1898 p. 660; 3 Comp. Stat. p. 3910.* This act of 1846 provides that "the court of chancery shall have power upon bill filed in that court for the partition of real estate to decree the sale thereof."

The special master making the sale was further directed to report the sale for confirmation, and upon confirmation to execute sufficient conveyance to the purchasers for the said real estate upon their complying with the conditions of sale, and the decree then further directed "that such conveyance duly executed be valid and effectual forever and operate as an effectual bar, both at law and in equity, against the said parties, complainant and defendant, and all persons claiming by, from or under them, or any of them."

This clause in the decree, which declares the effect of the conveyance as a bar, is, I take it, only an express declaration of an effect which, without any such declaration, impliedly and necessarily results from the decree for sale, and a conveyance thereunder, and has this result by reason of the express statutory power of the court to direct a sale upon a bill for partition. My present view, therefore, is that a deed from the master as directed by this decree for sale would bar all parties to the suit who were brought into court and were subject to decree.

As to the objection that the master's failure to advertise and notice the sale in Warren county, I conclude this is fatal to an application to require the purchaser to receive a deed tendered under the present confirmation of sale. The master in making this sale was exercising a purely statutory power to pass the title of owners who do not themselves personally join either in the condition or agreements of sale, or in the conveyances of their

title. The title depends therefore strictly upon the master's execution of the power as directed. In *Osborne* v. *Tunis* (*Chancellor Green, Court of Errors and Appeals, 1856*), *25 N. J. Law 633, 662,* it was said: "The execution of a power to sell lands by public officers must be in strict pursuance of the law, or no title is conveyed," and a deed was excluded because proof of advertisement was not made. The foundation of the purchaser's title in this cause is the public notice and advertisement in the places required by the statute.

An objection to the sale based on the master's failure to comply with the statutory directions for advertising or notice was valid on general principles, and, before the statute of 1906, a purchaser was not required to complete such sale. *Rudderow* v. *Dudley* (*Court of Errors and Appeals, 1886*), *41 N. J. Eq. 611.* The statute of 1906 was intended to give the purchaser the benefit of objecting to those defects of title in the lands existing at the time of the sale, as to which he previously bought at his own risk.

As part of the land was admittedly in Warren county, and no advertisements or notices were made in this county, the sale *prima facie,* at least, on the record, must appear to be a defective execution of the power, and not to pass title. And to complete proof of his title under a deed given upon this order of confirmation, the purchaser, if he relied on this deed, and it were then admitted or were proved, as it certainly could be, that portion of the land was located in Warren county, certainly could not sustain this deed as muniment of his title, without the further proof that the land in Warren county was altogether occupied by the canal company, and also that this title of the canal company to the unadvertised portion was a fee-simple. The order of confirmation in this case proceeded as upon a valid advertisement and did not operate to cure this defective execution of the power of sale by the master. So long therefore as the master stands upon the present order of confirmation of sale, the purchaser should not be compelled to take the title. Inasmuch, however, as the other objections do not now seem valid, the master may, if he desires, apply for a confirmation under the act of February 16th, 1891 (*P. L. 1891 p. 24*), relating to sales

where the advertisements are defective. This act covers sales made after its passage, as I held in *Polhemus* v. *Priscilla* (*1903*), *54 Atl. Rep. 141*, and *Umbach* v. *Umbach* (*1914*), *82 N. J. Eq. 427*, and cannot be considered as repealed because of failure to include it in the compiled statutes. *Umbach* v. *Umbach, supra.*

Unless the sale is specially confirmed under the statute of 1891, and so long as his title would depend on the validity of a deed executed on the present sale and order of confirmation, the purchaser should not be required to take the deed and complete the purchase. If such confirmation under the act of 1891 should be allowed, this defect may be cured before the order to accept the deed. *Umbach* v. *Umbach, supra.*

The petition should therefore be denied, but without prejudice to such application within a time to be fixed.