## WYOMING BUILDING & LOAN ASS'N v. MILLS CONST. CO., ET AL.
(No. 1476; July 17, 1928; 269 Pac. 45)

516

*Durham & Bacheller,* for plaintiff in error.

518

*R. N. Ogden Jr., Hagens & Murane,* and *Laura B. Harris,* for defendants in error.

BLUME, Chief Justice.

Plaintiff in error, the Wyoming Building and Loan Association, brought an action against the Mills Construction Company to foreclose a mortgage on certain real property in Natrona County, Wyoming, making D. E. Davidson and Pat Royce, junior mortgagees, parties defendants. Judgment was entered on February 21, 1927, foreclosing the respective mortgages of the parties, finding the amount due under each and directing the sale of the premises, the proceeds to be applied first to satisfy the claim of the plaintiff in error in the sum of $8031.38 and costs and interest, second, the joint claim of Davidson and Royce in the sum of $6059.88, and third, the individual claim of Royce in the sum of $5418.61. A sale of the premises was accordingly had. Plaintiff in error purchased the premises at the sum of $11,185.61. This amount was just sufficient to pay the claim of plaintiff in error and the sum of $3007.28 paid for taxes. On April 18, 1927, the court entered an order confirming the sale and giving plaintiff in error credit for the taxes paid as above mentioned. On August 24, 1927, D. E. Davidson and Pat Royce, defendants in error herein filed a motion to modify the order of confirmation claiming that plaintiff in error should not be allowed credit for the taxes paid, but that this amount should be paid over and applied on their claim. This motion was sustained by the court on August 24, 1927, and this appeal is taken from the order of the court to that effect. The bill of exceptions herein shows that the taxes above mentioned were paid by plaintiff in error subsequent to the enry of the judgment of February 21, 1927, and prior to the sale of the premises. According to the sheriff's return of sale the sum of $3007.88 was applied on the taxes. The mortgage of plaintiff in error provides that the mortgagor shall pay all taxes on the premises and that in case of failure to make such payment the plaintiff in error is authorized to do so, the amount thereof to

be added to the mortgage indebtedness. These taxes appear to have been the taxes for 1926, or for that year and previous years, the amount of which was in dispute and was not finally settled until the entry of the final judgment of February 21, 1927. They were due and delinquent at the time of payment thereof.

1. The brief of counsel for defendants in error disputes some of the facts stated in the bill of exceptions, but according to that bill the only question before us is as to whether or not the plaintiff in error was entitled to be reimbursed for the taxes paid by it after its mortgage indebtedness was reduced to judgment and before the sale of the property thereunder. Defendants in error want that amount of money applied on their judgments. We may well say, as was said by the Supreme Court of Minnesota in a similar case (Gorham v. National Life Ins. Co., 62 Minn. 327), that "a claim so inequitable must be clearly shown to have the support of strict legal right, before it can be granted." In that case the mortgagor was held to be entitled to be reimbursed for taxes paid after advertising the mortgaged premises for sale under a power contained in the mortgage, but before the sale actually took place. And while that case is, perhaps, not in point, because there was no intervening judgment as in the case at bar, the injustice of the claim of the defendants in error is just as striking as the injustice of the claim made in that case. It is argued that the doctrine of *caveat emptor* is applicable; that the plaintiff in error bought subject to all the burdens resting on the premises at the time of the sale. That is stated to be the general rule in 35 C. J. 78, but we are not sure that it is applicable to payment of taxes. See Kenton v. Cormick, 11 Ky. L. 487; Crawford v. Wiedemann, 154 Ky. 666, 159 S. W. 555; Pedley, Receiver v. Williams, 181 Ky. 336, 205 S. W. 323, and cases cited; Turrill v. Turrill, 7 Ont. Pr. 142; Craig v. Smith, 84 N. J. Eq. 593; 95 Atl. 194; See also Maroney v. Tannehill, 90 Okla. 224, 215 Pac. 938, 943. And if it does not apply in such case, it would, perhaps, make no difference

whether the taxes were paid before or at the time of the sale. Gormley v. Bunyan, 138 U. S. 623, 11 Sup. Ct. 453, 34 L. Ed. 1086. We shall not decide the point herein, for the reason, if no other, that the premises in this case were not in fact bought subject to any taxes. Nor is the doctrine of *caveat emptor* applicable where a judicial sale is involved, until after the sale has been finally ratified, for the reason that the sale is not complete until then. Byrd v. Day, 138 Md. 442, 114 Atl. 486. We may mention in this connection that it is apparent herein, that the plaintiff in error bought the premises for the amount bid with the understanding that it should be reimbursed for the taxes paid. To compel it now to pay over to defendants in error the amount already paid for taxes would in effect be to compel it to pay more than it actually bid. That cannot be done, if the point is raised before confirmation. The court at most, if it was not satisfied with the sale, could have set the sale aside. Hotchkiss v. Clifton Air Cure, 2 Abb. Dec. (N. Y.) 406, 43 N. Y. 170. See also Young and McWhorter v. Smith, 88 W. Va. 445, 107 S. E. 110; Buskirk v. Musick, 100 W. Va. 205, 130 S. E. 433; *Ex parte* Patterson, 121 S. C. 78, 113 S. E. 467; Kirk v. Oakey, 110 Va. 67, 65 S. E. 528, 135 A. S. R. 915; Craig v. Smith, 84 N. J. Eq. 593, 95 Atl. 194, showing that a purchaser at a judicial sale will be relieved from his bid by reason of the existence of prior liens, if he applies therefor before confirmation of the sale. That the plaintiff in error gave the court to understand before confirmation that it did not want to purchase the premises at the amount bid subject to taxes of about $3,000 is clear.

2. Counsel for defendants in error argue that the amount paid by plaintiff in error for taxes is but an integral part of the amount of indebtedness owing to it under the mortgage; that while it had the right to pay the taxes before judgment and have it included therein, the failure to do so bars it from any further claim, because the judgment is conclusive of the amount owing it. It is hard to see

how the rule that a judgment is final as to the amounts owing to a plaintiff from defendant is applicable in this case, for the amount paid out for taxes in this case was not in fact owing at the time the judgment was rendered herein, and could not, accordingly, have been merged therewith. And it may be said, in passing, that the doctrine of merger is calculated to promote justice and will be carried no further than the ends of justice require. Freeman on Judgments, (5th Ed.), Sec. 550. But counsel rely on the rule stated in a number of authorities that a party cannot split his causes of action, that the lien for taxes paid does not exist independently of the mortgage, and that accordingly a mortgagee who pays the taxes on land to protect his interest must enforce his claim therefor at the time of foreclosing, the mortgage and that he cannot subsequently maintain an action for reimbursement. The main cases cited are Northern Finance Corporation v. Byrnes, 5 Fed. (2d) 11; Horrigan v. Wellmuth, 77 Mo. 542; Johnson v. Payne, 11 Neb. 269, 9 N. W. 81; Vincent v. Moore, 51 Mich. 618, 17 N. W. 81; Stone v. Tilley, 100 Tex. 487, 101 S. W. 201, 10 L. R. A. N. S. 678 and note thereto; Semans v. Harvey, 52 Ind. 331; Hitchcock v. Merrick, 18 Wis. 357; Dickinson v. White, 64 Iowa 708, 21 N. W. 153; Manning v. Tuthill, 30 N. J. Eq. 29; Cooley, Taxation (4th Ed.) Sec. 1262; Jones on Mortgages, Sec. 1597. Other cases are cited, but they are all distinguishable from the case at bar. In the Federal case, supra, the mortgagor loaned money to the receiver to pay taxes without obtaining authority from court given to the receiver to borrow the money, and the case is not in point. In Harrigan v. Wellmuth, supra, the mortgagee was, under the circumstances of the case, allowed the taxes paid by him. In Johnson v. Payne, supra, the mortgagee had paid taxes before the proceedings in foreclosure were started, but failed to ask for judgment for the amount so paid, and never asked to be reimbursed until after confirmation of the sale. In Stone v. Tilley, and Vincent v. Moore, supra, the foreclosure was under power of attorney and the

amounts previously paid by the mortgagee were not included in the foreclosure. In each of these cases, a personal judgment was subsequently sought to be recovered against the mortgagor, but this right was denied. In Semans v. Harvey, and Hitchcock v. Merrick, supra, the taxes were paid by the mortgagee after the sale and a personal judgment was sought against the mortgagor. In all of these cases the proceedings to recover the taxes were not taken until after the sale of the premises was completed, (if sold under a judgment, until after confirmation), and the decisions were based mainly on the theory that the main indebtedness and the lien thereunder were extinguished by the sale and that the right to recover the taxes existed only so long as the main indebtedness and lien existed. A contrary conclusion was reached in Pennsylvania. Hogg v. Longstreth, 97 Pa. 255; Fidelity etc. Trust Co. v. Second etc. B. & L. Ass'n., 17 Pa. Sup. Ct. 270. But without reference to that it is clear that when the plaintiff in error paid the taxes and sought to be reimbursed for them, the main indebtedness and the lien which it had were not extinguished, since the sale was not complete until after confirmation, and the difference in the cases is vital, even without reference to the difference in the remedies sought to be applied. A mortgage lien is not extinguished by the mere rendition of a judgment of foreclosure. It is extinguished only by sale. Freeman on Judgments, Sec. 585. In Dickinson v. White, supra, the taxes had been paid before foreclosure had been commenced, and no judgment was sought for the amount, but relief, in effect, was sought against the purchaser of the land. The court held that the purchaser took the land free from the burden of these taxes and that the lien of the mortgage was exhausted by the sale. Similar in effect is Young v. Brand, 15 Neb. 601, 19 N. W. 494, and Manning v. Tuthill, supra. The justice of this position is perceived at once, but in the last cited case the court remarked:

"As between him (the mortgagee) and the holders of encumbrances subsequent to his, he was entitled to subrogation in the foreclosure suit, on the payment of the tax, but as against a purchaser at the sheriff's sale he was not."

The point, in fact, in the case at bar, is substantially as to whether or not the plaintiff in error is entitled to subrogation as against subsequent encumbrances during the foreclosure suit.

The right of subrogation may arise and sometimes must arise from contract. This is conventional subrogation. The right is sometimes given in the absence of contract, is then a creation of the court of equity and is given when otherwise there would be a manifest failure of justice. This is legal subrogation. It is a mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it, though it is not exercised in favor of a mere intermeddler. This principle, adopted from the Roman law and at first sparingly exercised, has come to be one of the great principles of equity of our jurisprudence and courts incline to extend it rather than restrict it. Gowing v. Bland, 2 How. (Miss.) 813; Olsen v. Peterson, 88 Kan. 350, 128 Pac. 191; Fidelity etc. Bank v. Borough Bank of Brooklyn et al., 161 App. Div. 479, 146 N. Y. S. 870; Trust Co. v. Spencer, (Mo. App.) 201 S. W. 967, 969; Padgett v. County, (Tex. Civ. App.) 204 S. W. 1046, 1053; Dixon v. Morgan, 154 Tenn. 389, 285 S. W. 558, 561; 37 Cyc. 373. One instance in which legal subrogation is applied is in connection with the protection of a lien, and the rule is universal that one who has an interest in property by lien or otherwise, in making payment of prior liens, including taxes, is not a mere volunteer, and that he will be entitled, upon payment of a superior lien in order to protect his own lien, to be subrogated to the rights of the superior lienholder. Marks v. Baum Building Co., 73 Okla. 264, 175 Pac. 818; Wiltse, Mortgage Foreclosure, Sec. 542 and Sec. 1221; Cooley, Taxation, Sec. 1263; 37 Cyc. 443, 444; 25 R. C. L. 1346.

In the case at bar we find conventional subrogation. The mortgage provides that the mortgagee should have the right to pay the taxes in case of failure of the mortgagor to do so, the amount so paid to be added to the debt. This contract is, perhaps, somewhat broader than legal subrogation, for the right to pay the taxes is granted whether necessary for protection or not. Counsel for defendants in error argue that this right became extinguished when the mortgage was foreclosed and judgment was entered. It is, of course, true that the mortgage indebtedness existing and due at the time of the entering of the judgment was merged in the latter, but whether the right to pay the taxes, given under the mortgage as above mentioned, was also completely extinguished is another question. A mere judgment of foreclosure does not, as already stated, even merge the mortgage debt so as to impair the lien of the mortgage; the lien is not discharged except by sale. Freeman, supra, Sec. 585. So a judgment rendered upon one installment, secured by a mortgage, does not affect an installment falling due subsequently, even though the latter might have been pleaded by supplemental complaint. Freeman, supra, 605. Neither would the lien of a mortgage, of course, be extinguished in such case, except as it would be affected by a sale of the premises under the judgment for the first installment. Hence whether or not the conventional right of subrogation herein was extinguished is at least a question. But if it was, the plaintiff in error had subsequently at least the right of legal subrogation, for that right is extended to judgment lienholders as well as mortgage lienholders. Cooley, Taxation, Sec. 1268; Dickson v. Hynes, 36 L. Ann. 684; Mosier's Appeal, 56 Pa. St. 76, 93 Am. Dec. 783; Carlton v. Reeves, 157 Ga. 602, 122 S. E. 320. It is extended to a mortgagee although there may be no clause in the mortgage permitting him to pay taxes. It is even extended to a mortgagee who pays taxes in good faith, but whose mortgage is absolutely void or barred by limitation, and to a second mortgagee who has paid taxes but whose lien is

extinguished by the foreclosure of a prior lien. Wiltse, supra, Sec. 542 and cases cited; Catlin v. Mills, 140 Wash. 1, 247 Pac. 1013, 47 A. L. R. 545. There is no sound reason, legal or equitable, why the right of legal subrogation should stop with the rendition of a judgment in favor of a lienholder. To extend that right to him after judgment may be just as imperative as to extend it to him before judgment. Taxes may fall due after judgment and before sale, and failure to pay them may result in large penalties, or the property might be sold for taxes during that time, and the inability to pay them for protection might result in great loss; nay, litigation in the appellate courts, on appeal from the judgment, might be so protracted as to extend beyond the time during which redemption from a tax sale could be made under the statute. Hence the unsoundness of the contention that the right to pay taxes for protection is cut off by the rendition of the judgment in the case in favor of a lienholder must be apparent.

The only remaining question, accordingly, is whether plaintiff in error may be said to have paid the taxes for the protection of its lien, or whether it should, under the circumstances, be said to have been a mere volunteer and intermeddler who had no right to undertake to pay them. And it is argued that the property could not have been sold for taxes under the laws of this state until the month of June, 1927, and that hence there was no necessity for plaintiff in error to pay them. It is apparent in this case that plaintiff in error did not mean to be a volunteer, but that it in good faith believed that the payment of the taxes was necessary to protect its lien. Pomeroy, Eq. Jur. (2nd. Ed.) Sec. 2346, in discussing subrogation for one who pays a debt in self-protection, says:

"It would seem here, as in the first class of cases, that one acting in good faith in making his payment, and under a reasonable belief that it is necessary for his protection is entitled to subrogation, even though it turns out that he had no interest to protect."

A number of cases are cited, See also 37 Cyc. 445; Hankins v. Minchew, (Tex. Com. App.) 285 S. W. 264; Phelan v. Kennedy, 171 N. Y. S. 410, 173 N. Y. S. 687. It is apparent from these authorities that the necessity for self-protection need not be absolute. 25 R. C. L. 1347, in speaking of the payment by a subsequent lienholder of a prior mortgage, says, it is true, that "it must appear that the discharged mortgage was due and was about to be enforced against the property." In Gipps Brewing Company v. Wasson, 193 Ill. App. 158, on the other hand, it is held that the right of subrogation of a lienholder who pays a prior mortgage is not dependent on the fact that he was compelled to pay such prior mortgage for his protection. Harris, on Subrogation, Sec. 13, says that "the right of subrogation accrues in favor of creditors, where a subsequent creditor pays an incumbrance held by a prior incumbrancer, where benefit may result to one without injury to the other." And in Mosier's Appeal, 56 Pa. 76, 81, the chief justice, speaking for the court, said of the same rule:

"I regard the doctrine as applicable in all cases where payment has been made under a legitimate and fair effort to protect the ascertained interests of the party paying, and when intervening rights are not legally jeopardized or defeated."

In Whitehead v. Knitting Mills, 194 N. C. 281, 139 S. E. 456, the law is stated thus:

"It has often been said that the law will not aid a mere volunteer, or one who seeks to become a creditor without right or necessity for so doing."

Whatever may be the rule, however, in other cases, public policy requires that taxes be paid promptly when due or delinquent; payment thereof by one who or whose property may be ultimately liable therefor should be encouraged rather than the contrary, and the requirements as to the necessity for protection should not be strict, but liberal, in

order to entitle a lienholder who pays such taxes to subrogation. The principle of subrogation should not be able to be defeated by the mere fact that a lien-holder may have paid due and delinquent taxes perhaps a few weeks too early. It is said in Wiltse, supra, Sec. 542, that in order to give a mortgagee the right of subrogation for taxes paid, it is not necessary for him to wait to pay them until the taxes are delinquent or the premises are sold, or offered for sale. In Williams v. Townsend, 31 N. Y. 411, 414, the court said:

"A mortgagee who desires to pay off taxes or assessments and charge them to the mortgaged premises, has a very plain course to pursue. At any stage of the proceedings he can step forward in his character as mortgagee and pay the assessment or redeem from a sale before the purchaser's title has actually ripened by a conveyance under the law."

We can think of no sound reason why this right should be limited to mortgagees whose mortgage has not been foreclosed. We are not unmindful of the case of McCrossen v. Harris, 35 Kan. 78, 10 Pac. 583, which, and which only, of the cases cited, seems to give some support to the contentions of counsel for defendants in error. The court in that case held that the mortgagor whose mortgage has been foreclosed was a volunteer in paying taxes subsequent to the foreclosure, because he was protected under the statute which provided for payment of the taxes out of the sale of the premises. But without reference to other things that might be said as to that case, the court frankly confesses the result reached to be unjust. We see no good reason why we should come to a conclusion which leads to unjust results in the case at bar. Some courts seem to take the position that as regards the state, lienholders equally owe the duty to pay taxes, in case the owner fails to pay them. See Connecticut Mutual Life Ins. Co. v. Bulte, 45 Mich. 113, 7 N. W. 707; Norton v. Myers, 74 Minn. 484, 77 N. W. 298, 539. If that were so, it would follow, of course, that a person performing his duty should not be penalized for

doing so. The rule has been mentioned mainly in connection with cases involving the question as to whether or not one mortgagee can obtain title through a tax sale as against another mortgagee or against the mortgagor, and the cases are not at all uniform. See extended note L. R. A. 1917 D 522. Whatever the true rule is in such case, it would seem that the courts that speak of the existence of the duty would readily concur in the right of one mortgagee or other lienholder to pay the taxes at any time in case of the failure of the mortgagor to do so, with the further right of subrogation to the rights of the state and priority of right over subsequent lienholders as to the amounts paid. Delinquent taxes draw a comparatively high rate of interest; property when put up for sale is apt to sell better and at a higher price when delinquent taxes are paid; someone is required to pay the taxes in any event; neither the mortgagor nor the subsequent lienholders could, in the case at bar, possibly sustain any legal injury by the payment of the taxes by the plaintiff in error and by such subrogation; public policy demands, as heretofore stated, that taxes be paid promptly, and to deny the right of subrogation to the plaintiff in error in view of these facts, would be plainly a denial of justice. The property itself was, of course, discharged of the lien, and the right of subrogation should be transferred to the proceeds.

We conclude, in short, that the plaintiff in error was, under the facts in this case, entitled to be reimbursed for the taxes which it had paid as above mentioned, and that the defendants in error have no legal or equitable claim to the surplus arising from the sale representing the amount so paid.

The judgment of the District Court is accordingly reversed, and the cause is remanded for further proceedings not inconsistent herewith.

*Reversed and Remanded.*

KIMBALL and RINER, JJ., concur.