740 A.2d 140

SUMMIT BANK, SUCCESSOR BY MERGER TO OCEAN NATIONAL BANK, PLAINTIFF–RESPONDENT, v. DENNIS THIEL AND ROSE THIEL, HUSBAND AND WIFE, AND ALLIED BUILD-ING PRODUCTS, INC., DEFENDANTS.

IN THE MATTER OF R & H PARTNERSHIP, APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted February 19, 1998—Decided May 19, 1998.

Wefing, J.A.D., files a dissenting opinion.

Before Judges BROCHIN, WEFING and BRAITHWAITE.

*Lee David Medinets*, attorney for appellant.

*Bourne, Noll & Kenyon*, attorneys for respondent (*Timothy A. Kalas*, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

Appellant R & H Partnership was the highest bidder at a foreclosure sale under a mortgage on real property. Ocean National Bank was the foreclosing mortgagee, and respondent Summit Bank is its successor by merger. Before delivery of the deed, R & H Partnership moved to be relieved from its bid pursuant to *N.J.S.A.* 2A:61–16. Insofar as pertinent, that statute reads as follows:

> Any purchaser of real estate at any public sale, held by any officer or person mentioned in section 2A:61–1 of this title . . . shall be entitled to be relieved from his bid if, before delivery of the deed, he shall satisfy the court by whose authority such sale was made of the existence of . . . any lien or encumbrance thereon, unless a reasonable description of the . . . liens or encumbrances thereon, with the approximate amount of such liens and encumbrances, if any, be inserted in the notices and advertisements required by law, and in the conditions of sale. . . .
>
> [*Ibid.*]

As the basis for its motion, R & H Partnership showed that at the time of the sale, at which its final bid was $46,300, the property was encumbered by tax sale certificates totaling $23,647.47. The published notice which advertised the sale referred only to a first mortgage for $32,000, not to the existence of the tax sale certificates or to their amount. Prior to the sale, the sheriff made the customary announcement that the sale would be "subject to the liens of unpaid taxes and other open municipal charges that may be outstanding against the subject premises." But there was no statement of the amount of unpaid taxes secured by the liens on the property.

R & H Partnership denies that it learned the amount of unpaid taxes from any other source before the sale, and there is no evidence to the contrary. The foreclosing mortgagee learned the amount of unpaid taxes prior to the sale by inquiry from the tax office of the municipality in which the property is located.

The foreclosure court denied R & H Partnership's motion to be relieved from its bid. The court's oral opinion dealt primarily with an argument based on *N.J.S.A.* 46:15–5(c), a statute concerning affidavits of consideration, which R & H Partnership had made in its original motion brief. The court stated, "Since *N.J.S.A.* 46:15–5[(c)] does not require [R & H Partnership] to include[ ] liens for unpaid taxes in its affidavit of consideration, the movant is not entitled to be relieved of the consequences of being a successful bidder." In a reply brief to the foreclosure court dated the Monday before the Friday on which the motion was heard, R & H Partnership conceded that *N.J.S.A.* 46:15–5(c) did not support its argument. Instead, it relied on the plain language of *N.J.S.A.* 2A:61–16.

In R & H Partnership's brief to our court, it argues that the latter statute entitles it to be relieved of its bid because the mortgagee failed "to disclose the existence and extent of tax liens on the subject property." Summit Bank responds that *N.J.S.A.* 2A:61–16 is intended to protect bidders only from undisclosed liens such as mortgages and judgment liens, which can be discovered only by a title search. Unlike those liens, it points out, liens for unpaid taxes will encumber virtually every property foreclosed, and those taxes are always a first lien on the land. *See N.J.S.A.* 54:5–9. Summit Bank also argues that the construction of *N.J.S.A.* 2A:61–16 for which R & H Partnership contends "would disrupt and violate the long[-]standing public policy that judicial sales be set aside only when necessary for compelling reasons."

The plain language of *N.J.S.A.* 2A:61–16 clearly supports R & H Partnership's position. R & H Partnership is a "purchaser of real estate at any public sale, held by any officer or person mentioned in section [*N.J.S.A.*] 2A:61–16." It asks "to be relieved from [its] bid ... before delivery of the deed." It has shown "the existence of ... [a] lien or encumbrance thereon"—the lien for unpaid taxes or the outstanding tax sale certificates. And "the approximate amount of such liens and encumbrances ... [was not] inserted in

the notices and advertisements required by law, and in the conditions of sale."

If R & H Partnership knew "the approximate amount of . . . liens and encumbrances" on the property for which it was bidding, it would not be entitled to be relieved of its bid, despite the mortgagee's failure to comply with the requirements of *N.J.S.A.* 2A:61–16. *Fuchs v. Syndicate Realty Co.*, 107 *N.J.Eq.* 506, 506, 508 (E. & A.1931) (high bidder at mortgage foreclosure was not entitled to be relieved of his bid because he knew both the existence *and amount* of unpaid taxes). On the basis of the present record, however, we must assume that R & H Partnership, unlike the high bidder in *Fuchs, supra,* did not know the amount of the tax liens. The question for us to decide is, therefore, whether a successful bidder at a mortgage foreclosure sale is entitled to relief under *N.J.S.A.* 2A:61–16 because, although he must be deemed to have known of the existence of unpaid taxes, their amount was neither known to him nor stated "in the notices and advertisements required by law."

In *Lepore v. Ajamian,* 40 *N.J.Super.* 214, 217, 122 *A.2d* 666 (App.Div.1956), where the disclosure provisions of *N.J.S.A.* 2A:61–16 had apparently not been complied with, we held that the receiver appointed under the mortgage was nonetheless not obligated to pay the accrued real estate taxes. When the property was sold, an announcement was made that the sale was subject to taxes. *Ibid.* We pointed out that the announcement had undoubtedly depressed the bidding, and we declared, "Having had the benefit of this depressive effect, the [buyer] is not entitled" to "have the taxes paid by the receiver." *Id.* at 216–17, 122 *A.2d* 666. However, that case is not a guide to our decision of the present case because we expressly refrained from construing *N.J.S.A.* 2A:61–16. Our opinion in *Lepore* states, "[W]e need give no consideration to *N.J.S.* 2A:61–16 . . .; neither the [buyer] nor his assignor has asked to be relieved of the bid, and besides the assignor accepted the deed." *Id.* at 217, 122 *A.2d* 666 (citation omitted).

In *Franklin Mortgage & Title Ins. Co. v. Muster,* 135 *N.J.L.* 289, 51 *A.*2d 235 (E. & A.1947), a defendant in a deficiency action subsequent to a mortgage foreclosure asserted as a defense "that the mortgaged premises were sold by the Sheriff subject to unpaid municipal taxes and assessments, without the amount thereof having been advertised, specified, or otherwise announced." *Id.* at 290, 51 *A.*2d 235. The Court ruled that "the statutory mandate was fully observed" because "[i]t appears that actually there were no taxes or assessments due at the time of the Sheriff's sale." *Id.* at 292, 51 *A.*2d 235. The strict holding of this case is only that if no taxes are due, the failure to state an amount of overdue taxes does not violate *N.J.S.A.* 2A:61–16. It does not hold, as R & H Partnership argues, that a statement of the amount of taxes is required when there are taxes due.

The only case we have found that appears to have decided the issue with which we are concerned is *Craig v. Smith,* 84 *N.J.Eq.* 593, 95 *A.* 194 (Ch.1915). The subject of that suit is a partition sale. *Id.* at 594, 95 *A.* 194. The successful bidder sought relief under what is now *N.J.S.A.* 2A:61–16 because "there are unpaid taxes which are on the property, and of which no notice was given at the sale." *Id.* at 595, 596, 95 *A.* 194. On that issue, the Vice–Chancellor ruled, "As to any unpaid taxes, the purchaser can be protected by a deduction from the purchase money, and under the law of 1906 [*N.J.S.A.* 2A:61–16] this is then no ground for relief from his bid." *Id.* at 596, 95 *A.* 194. In so ruling, he relied on the last clause of the statute. *Ibid.* (that part of *N.J.S.A.* 2A:61–16 reads, "but, if the court shall direct any lien or encumbrance not described, and which is due and payable, to be paid out of the proceeds of sale, the purchaser shall not then be relieved by reason of such lien or encumbrance"). Implicit in this ruling is the view that, but for the utilization of this escape clause, the high bidder would have been entitled to be relieved of his bid because of the failure to advertise unpaid taxes.

There is a further clue to the correct construction of *N.J.S.A.* 2A:61–16 which is consistent with *Craig, supra.* Describing the

scope of the title search which must be made on behalf of a mortgagee before foreclosure, 30 *New Jersey Practice, Law of Mortgages* § 207 at 68 (Roger A. Cunningham & Saul Tischler) (1975), says, "A tax search must be made to ascertain unpaid municipal liens." A footnote to that sentence reads, "The tax search is necessary to verify tax defaults and to enable the amount of the taxes to be inserted in the notice and conditions of sale pursuant to the statute, *N.J.S.A.* 2A:61–16." *Id.* at 68 n. 32.

The interpretation of the statute implied by *Craig, supra,* would entitle R & H Partnership to be relieved from its bid. The opposing argument is that a party on notice of facts that should have led to further inquiry should be treated as if it had made the investigation which prudence dictated. *See Howard v. Diolosa,* 241 *N.J.Super.* 222, 232, 574 *A.*2d 995 (App.Div.), *certif. denied,* 122 *N.J.* 414, 585 *A.*2d 409 (1990); *Lesser v. Strubbe,* 56 *N.J.Super.* 274, 291–92, 152 *A.*2d 409 (Ch.Div.1959), *rev'd on other grounds,* 67 *N.J.Super.* 537, 171 *A.*2d 114 (App.Div.1961), *aff'd,* 39 *N.J.* 90, 187 *A.*2d 705 (1963). The partnership necessarily knew that there were probably unpaid tax liens on the property for which it proposed to bid, and it could readily have ascertained their amount. *See N.J.S.A.* 54:5–12; *Simon v. National Community Bank,* 282 *N.J.Super.* 447, 452, 660 *A.*2d 558 (App.Div.), *certif. denied,* 143 *N.J.* 322, 670 *A.*2d 1063 (1995).[1] Therefore, the argument goes, R & H Partnership should be treated as if it knew

---

[1] During oral argument on the motion before the foreclosure court, the attorney for R & H Partnership asserted that the municipality in which the property was located had a policy of refusing tax information to anyone who did not have a present lien or ownership interest in the property. No evidence was submitted of such a policy. Even if it existed, we consider it immaterial. In view of the clear mandate of the statute, *N.J.S.A.* 54:5–12 (township official must issue certificate listing liens arising from taxes and other municipal charges within fifteen days of proper application); *N.J.S.A.* 54:5–18 (applicant holds land free from municipal liens arising at date proper request made where official fails to issue tax search within time provided by statute), a telephone call to the municipal attorney would undoubtedly have led him to correct any misperceptions on the part of the tax officer who is obligated to supply the information.

the full amount of the unpaid tax liens and, pursuant to *Fuchs, supra,* is barred from relief.

We reject that argument, however. First, it would impose a construction on the statute which is at variance with the statutory terms. The construction advocated by Summit Bank would mean that, since tax liens always are prior to mortgages and the amount of the taxes due is always readily ascertainable, tax liens are completely excluded from the statutory requirement of a statement of the "approximate amount of such liens." Secondly, such a construction would be contrary to the apparent intent of the statute. Prior to its enactment, "a foreclosure sale, like any other judicial and execution sale, was subject to the doctrine of *caveat emptor,* and a successful bidder was bound by his purchase irrespective of the condition of the title of the premises purchased." 30 *New Jersey Practice, supra,* § 360 at 299 (footnote omitted); *see also id.* at 299 n. 9 (citing cases decided prior to enactment of statute). The statute was evidently adopted to shift the burden of unearthing the existence and approximate amount of superior liens from bidders to the selling mortgagee.[2] Thirdly, as we have already indicated, the result contended for by R & H Partnership is consistent with the implied holding of *Craig, supra,* the only reported case directly on point, and with 30 *New Jersey Practice, supra,* an authoritative New Jersey treatise on the

---

[2] In *Oakley v. Shaw,* 69 A. 462 (N.J.Ch.1908) (not officially reported), the Vice–Chancellor wrote:

> What is aimed at by this statute is notice, and, independently of the statute, it seems to me that one who has notice of the condition of the title cannot object that he did not obtain that notice in the manner and form prescribed by the statute. In other words, he cannot be relieved if he has notice. The statute is entirely remedial, and should not be extended to one whose claim to the remedy is without equity.

> [*Id.* at 464.]

However, the facts of that case are that the undisclosed lien which the high bidder contended should entitle him to relief under the statute was a mortgage about which he had full knowledge because he himself was the mortgagor and former owner of the mortgaged property. *Id.* at 464–65. In the *Oakley v. Shaw* opinion, "notice" is being used, as it sometimes misleadingly is, to mean "knowledge."

subject, and this result is not inconsistent with any of the other reported cases that we have found which have considered the subject.

Unfortunately, the record submitted to us does not include any evidence of what the actual practice has been in mortgage foreclosure cases, if there is a consistent practice. We note, however, that our construction of *N.J.S.A.* 2A:61–16 cannot affect existing titles because, by the terms of the statute, relief is available only before delivery of the deed.

The order appealed from is therefore reversed and the matter is remanded to the Chancery Division for further proceedings consistent with this opinion.

WEFING, J.A.D., dissenting.

My colleagues conclude that R & H Partnership is entitled to be relieved from the bid which it tendered upon property which was sold by the Sheriff of Ocean County at public sale. I am unable to agree and accordingly dissent.

From the sparse record before us, we know the following facts. The property in question, 579 Pennsylvania Avenue, Brick, New Jersey, had been owned by Dennis and Rose Ann Thiel. It was subject to at least two mortgages, a first mortgage held by Ramapo Savings and Loan Association in the principal sum of $32,000 and a second mortgage held by Summit Bank, the successor by merger to the original mortgagee, Ocean National Bank. Summit Bank commenced foreclosure proceedings on its second mortgage and obtained a judgment of approximately $73,000.

The property was advertised for public sale four times. *N.J.S.A.* 2A:61–1. The sale was originally scheduled to be held on January 21, 1997. The advertisement reserved the power to postpone the sale, *N.J.S.A.* 2A:61–5, –6, and it was actually conducted almost a month later, on February 18, 1997.

The published advertisement did not list any unpaid taxes on the property but, prior to the commencement of bidding, it was

announced that the property was being sold "subject to the liens of unpaid taxes and other open municipal charges that may be outstanding against subject premises." R & H heard this announcement and had also heard it in the past for it had previously attended other such sales. In addition, the "Foreclosure Sale Information Bulletin" which is posted by the Sheriff states "Sales are subject to all outstanding liens, mortgages and encumbrances which must be satisfied in order to obtain clear title."

R & H's bid of $46,300 was the high bid. R & H then ordered a title search and learned, apparently for the first time, that there were unpaid municipal taxes on the property that totalled in excess of $23,000.

*N.J.S.A.* 2A:61–16 provides that a purchaser at such a sale may be entitled to relief from his bid if he can:

satisfy the court ... of the existence of any substantial defect in ... title ... which would render such title unmarketable, or ... of any lien or encumbrance thereon, unless a reasonable description of the ... defects in title and liens or encumbrances ... with the approximate amount of such liens and encumbrances, if any, be inserted in the notices and advertisements required by law, and in the conditions of sale....

My colleagues read this statute literally and conclude that the failure of the published advertisement to list the amount of unpaid real estate taxes entitles R & H to judicial relief. I am satisfied, however, that this is an instance in which literal interpretation of a statute defeats the purpose of its enactment. I am further satisfied that this is also an instance in which consideration of the practical procedures which are routinely followed in a sheriff's sale can shed light on the underlying purpose of the statute at issue.

I note first that *N.J.S.A.* 2A:61–1 lists those items the Legislature has deemed essential to be included in a public notice of sale. The Legislature chose not to include the existence *vel non* of unpaid municipal taxes among those essential items despite the fact that it can hardly be gainsaid that a property being sold at a sheriff's auction pursuant to a mortgage foreclosure could be expected to have accrued a certain amount of unpaid real estate taxes.

The Legislature afforded a successful bidder a narrow avenue of escape through *N.J.S.A.* 2A:61–16 for it recognized that a title search might reveal the existence of items which could materially affect the value of the property but which a bidder might be ignorant of at the time of sale. This reflects the practical reality that, in light of the expense, a bidder would ordinarily not order a title search upon a parcel until it prevailed at auction.

Municipal taxes, however, stand in a different category than other liens which would be uncovered by a title search. Not only are they generally paramount to all other liens, *N.J.S.A.* 54:5–9, their existence is easily determined by checking with the local tax collector for the minimal fee of $10.00. *N.J.S.A.* 54:5–12, –14. There is no necessity that a bidder travel to the office of the particular county clerk or register and search those voluminous records to determine if any unpaid municipal taxes have accrued upon the property in which the bidder is interested or hire someone else to do that task. That information should be readily available locally. I recognize, as do my colleagues, that R & H refers obliquely to an apparent unwillingness on the part of the Brick tax collector to share such information in spite of a clear statutory directive. *N.J.S.A.* 54:5–12. If that is the collector's practice, a bidder should seek to have the collector comply with his statutory duties, rather than subsequently seek to set aside the bid.

I note, moreover, that at no point does R & H state that it approached the collector in this instance prior to the auction and was refused the requested information. It is fairly inferable, therefore, that R & H did nothing prior to this auction to learn whether there were unpaid taxes on this property.

Neither should we ignore the fact that sheriff's sales are often not conducted on the first advertised date. Indeed, adjournments of up to one year do occur. *See First Mutual Corp. v. Samojeden,* 214 *N.J.Super.* 122, 518 *A.*2d 525 (App.Div.1986); *but see N.J.S.A.* 2A:17–36 (limiting a sheriff's authority to adjourn a sale without court approval to two adjournments not exceeding fourteen days

each). The amount of unpaid taxes changes with the passage of each quarter and could, by time of sale, be significantly larger than originally stated.

Finally, my colleagues rely upon dicta in a trial court opinion, *Craig v. Smith,* 84 *N.J.Eq.* 593, 95 *A.* 194 (Ch.1915), as an indication of the proper construction of this statute. In doing so, they have not accorded appropriate recognition to the longstanding principle that:

> public policy ordains that the power to set aside judicial sales based upon competitive bidding should be sparingly exercised. The integrity of the process, designed as it is to secure the highest and best price in cash then obtainable for the property, demands that a sale so conducted shall be vacated only when necessary to correct a plain injustice.
>
> [*Karel v. Davis,* 122 *N.J.Eq.* 526, 529, 194 *A.* 545 (E. & A.1937).]

To the same effect, see *East Jersey Sav. & Loan Ass'n. v. Shatto,* 226 *N.J.Super.* 473, 476, 544 *A.*2d 899 (Ch.Div.1987) ("The power to set aside a foreclosure sale is to be exercised with great care and only when necessary for compelling reasons.") and *Froehlich v. Walden,* 66 *N.J.Super.* 390, 395, 169 *A.*2d 204 (Ch.Div.1961) ("[A] purchaser at a judicial sale is not ordinarily entitled to be relieved of his bid on the ground of mistake flowing from his own culpable negligence and not induced by a false representation.")

R & H has not established on this record that "a plain injustice" will result if it is not relieved of its bid. There is, for instance, no appraisal to establish that it will be required to pay more than the property's fair market value, as in *Karel v. Davis, supra,* where the bidder, through a combination of errors, bid more for the property than the appraised value set by both his appraiser and defendant's appraiser. The most that can be inferred from this record is that appellant will not receive a profit as great as it had anticipated. That does not constitute a "compelling" reason to set aside this sale.

I would affirm the order entered by the trial court.