FREDA WAGNER et al.

*v.*

GORDON B. PHILLIPS et al.

[Decided January 12th, 1911.]

1. A transfer of the equity of redemption by a mortgagor to a mortgagee may be valid, but when properly questioned it will be carefully scrutinized to prevent fraud and oppression.

2. So far as a transfer of the equity of redemption of mortgaged property involved, a transfer of the mortgagor's property as security, or in payment for services rendered by the mortgagor's attorney, the burden was on the attorney to establish the fairness, adequacy, and equity of the negotiation, and the security or conveyance would only be allowed to stand as security for the amount shown to be fairly due.

3. Complainant and her husband, on being arrested for keeping a disorderly house, conveyed real estate belonging to complainant, worth $11,500, subject to a first mortgage of $6,200, to their attorney, and at the same time with her husband signed a note to the attorney for $1,000, having previously paid him $400 on account of services. The husband thereafter signed another note to the attorney, in which complainant did not join, for $600, and later signed a third note for $600; the attorney executing an agreement to serve them faithfully and to reconvey the property when the notes and bail bonds had been discharged, with the right in the attorney to pledge the property to secure a discount of the notes and to procure bail. Complainant had knowledge of the first $600 note executed by the husband alone as shown in the attorney's written agreement, and the attorney, after procuring H., one of his clients, to endorse the notes for his accommodation, induced a trust company to discount the same and conveyed the real estate to the trust company's treasurer to secure the discount. Thereafter, in order to prevent a sale of the property on foreclosure of the first mortgage lien, H., in consideration of a payment of $500 to complainant and his assumption of all the notes and liens against the property, procured from her a conveyance of the equity of redemption.—*Held,* that, though H. had notice of the agreement between complainant and the attorney, that was not sufficient to charge him with notice that there had been any oppression or unfair dealing in including all the notes as a part of the consideration for his purchase, and there being no evidence that either when he endorsed the husband's notes, or purchased the equity, he was chargeable with notice that any of the notes were without consideration in the attorney's hands, complainant was not entitled to a reconveyance of the property as against H., except on repaying him all sums which he paid and all obligations assumed by him as a part of the consideration, though originally she was not personally bound for a part thereof, under the rule that, though a married woman be not bound to pay the debt of her husband by a conveyance of her property, she may convey it for that purpose, and if she does so the conveyance is valid both in law and in equity.

4. As between complainant and the attorney, the property was not chargeable with anything more than the $1,600 first due on the attorney's contract for services in which he contracted to receive $2,000 in full for all services rendered or to be rendered in the matter, and hence, as to the amount of the additional notes given to the attorney by the husband and included in the amount for which the property was conveyed to H., complainant was entitled to reimbursement from the attorney either as a contribution toward the payment she was required to make as a condition of relief against H., or as a payment to be made to her in case she failed or refused to perform the conditions.

---

Heard on bill, answers, replication and proofs.

*Mr. Charles M. Mason,* for the complainants.

*Mr. Roland D. Crocker* and *Mr. Thomas L. Raymond,* for the defendant Phillips.

*Mr. Frank M. McDermit, pro se.*

*Messrs. Howe & Davis,* for the defendant Trust Company.

*Mr. John Monteith* and *Mr. Harry Campton,* for the defendant Helbig.

EMERY, V. C.

Upon the pleadings and proofs in this case two questions are involved—*first,* whether a conveyance of the equity of redemption made by Mrs. Wagner, one of the complainants, and her husband to the defendant Helbig, who was, actually or substantially, a mortgagee of the premises at the time of the conveyance, shall be allowed to stand, and *second,* if not, upon what terms it should be set aside.

The grantee in this case was the second and last endorser on notes of the mortgagors, or one of them, which had been given to defendant McDermit, their attorney, the payee and first endorser, for compensation for services rendered and to be rendered in relation to a criminal prosecution. At the time of receiving the first two notes, the attorney received from his clients, the mortgagors, a conveyance in fee of the real estate standing in the name of Mrs. Wagner, which was recorded. One note for $1,000 was signed by both Mr. and Mrs. Wagner, the second for $600 by Mr. Wagner only. By a separate instrument, which was not acknowledged and could not be recorded, the attorney declared the absolute deed to have been given as security for the notes, with the right of the attorney to pledge the property as collateral for the payment of the notes. The attorney conveyed the lands in fee to an officer of a trust company, which discounted the two notes after the attorney had procured a second endorser, who was the defendant Helbig. Subsequently, two other notes, one for $600 and one for $300, signed by the husband only, were made to McDermit as payee and endorsed by him and discounted by the trust

company. The $600 note was endorsed by Helbig, but not the $300 note. The conveyance now attacked was made by the mortgagors to Helbig, the second endorser, on the commencement of foreclosure proceedings by the holder of a mortgage prior to the conveyance by Wagner to their attorney. As part of the consideration to, be paid by the second endorser on taking the deed, he agreed to take up the notes given to the attorney, which he had also endorsed for the attorney, and also the $300 note not endorsed by him. This agreement was carried out, and Helbig's individual note was discounted by the trust company, in payment of all the notes, thereby relieving the attorney as first endorser from all liability on the notes, and the notes so taken up were delivered by Helbig to McDermit, who still holds them. At the time of the conveyance by the mortgagors to the second endorser, the relation of clients and attorney still existed between the mortgagors and the first endorser, and the attorney advised the transfer to his subsequent endorser and surety.

The case in this aspect therefore involves the additional question as to how far the validity of the sale by the mortgagors to the mortgagee is affected by the fact that the transfer was in part a payment by the client of compensation to his attorney. A transfer of the equity of redemption by the mortgagor to the mortgagee may be valid, but when properly questioned is carefully scrutinized by the court, for the purpose of preventing oppression or fraud, and so far as the transaction is substantially one between attorney and client, involving the transfer of the client's property as security or in payment for the services of the attorney, it comes under the application of the further rule, that the burden of establishing the fairness, adequacy and equity of the negotiation rests upon the attorney, and the security or conveyance taken will only be allowed to stand as security for the amount shown to be fairly due. *1 Story Eq.* § *311; Brown* v. *Bulkley (Chancellor Green, 1862), 14 N. J. Eq. (1 McCart.) 451, 458; Condit* v. *Blackwell (Court of Errors and Appeals, 1871), 22 N. J. Eq. (7 C. E. Gr.) 481, 486; Porter* v. *Bergen (Court of Errors and Appeals, 1896), 54 N. J. Eq. (9 Dick.) 405, 406; 3 Am. & Eng. Encycl. L. (2d ed.) 337.*

The facts in detail are substantially as follows:

[After statement and discussion of evidence in detail, which is omitted by direction of the vice-chancellor, the opinion proceeds.]

.The real questions in the case relate to the complainants being entitled to relief against all or any of the other defendants, Helbig, Phillips and McDermit, and the conditions of such relief. These several defendants occupy different positions in relation to the equity asserted by Mrs. Wagner, as the owner of a property originally conveyed by absolute deeds but as security only. Helbig, by reason of his endorsement of the Wagner notes and the agreements to secure them made with the previous endorser McDermit, the benefit of which enured to him, stood at the time of the purchase substantially in the relation of a mortgagee dealing with a mortgagor for the purchase or release of the equity of redemption. Part of the consideration of the sale by the Wagners was that Helbig should pay all of the Wagner notes and the Mooney claim and the building and loan dues and costs of suit, these assumptions together amounting to over three thousand three hundred dollars, and Helbig has, in fact, assumed these payments in such a way that the Wagners were personally entirely relieved therefrom. So far as Helbig is concerned, this amount must, in considering the fairness of the bargain, be included as part of the consideration which he was to pay for the equity. Complainants claim that none of the notes (except the $1,000 first signed) were valid obligations of Mrs. Wagner, and that as Helbig at the time of the sale was chargeable with knowledge or notice of their invalidity, he cannot, except perhaps to the extent of the $1,000 note, be considered as a *bona fide* purchaser by their payment, and therefore in considering the fairness of the purchase of the equity of redemption, he is not entitled to include any indebtedness beyond the $1,000 as having been paid by him. Helbig's notice that the notes, other than the $1,000, were not liabilities of Mrs. Wagner, is claimed to be established by McDermit's evidence that he showed to Helbig the two agreements relating to the object of the deeds, and that Helbig knew all about them. Helbig's own statement is that he knew nothing about the agreements, and that he endorsed the notes relying on McDermit

and as an accommodation to him. Admitting Helbig's notice of the agreements, this of itself would not be sufficient to charge him with oppression or unfair dealing in including all of the notes as part of the consideration of his purchase, and there is no evidence that either when he endorsed the husband's notes or purchased the equity, he was chargeable with notice that any of the notes were without consideration in McDermit's hands. Neither of the Wagners objected to the validity of any of the notes at the time of Helbig's purchase and assumption of their payment, and although Mrs. Wagner might not have been bound to pay any debt of her husband by a conveyance of her property, she certainly had the right, if she chose, to so convey it, ·and a conveyance in legal form of her lands for such purpose is valid both at law and in equity. *Warwick* v. *Lawrence* (*Court of Errors and Appeals, 1887*), *43 N. J. Eq.* (*16 Stew.*) *179, 184.* The question, therefore, so far as Helbig is concerned, is whether, so far as these notes were part of the consideration, he is entitled to protection, after having paid them. In my judgment, he is so entitled, and no facts are proved in the case which show that in so including them Helbig was chargeable with any such fraud or oppression as would entitle the Wagners to set aside his deed and at the same time be relieved from payment of the notes assumed by Helbig. If this view be correct, then the equitable liability of Helbig, on the whole case, must rest on the relation of seller and purchaser, being at the same time mortgagor and mortgagee, and that even after taking into account the amount of the mortgagee's claim (being the notes endorsed or assumed), the sale cannot be supported. At the time of the purchase the amount due for interest to the building ·and loan association, including the dues, $565.30, and costs, $80, was $622.30. The amount of Wagner notes assumed was about two thousand eight hundred dollars, and with the $500 paid in cash to the Wagners, the whole amount (including the principal of the mortgages, $6,200) was about nine thousand five hundred and twenty-six dollars and thirty cents. The only evidence as to values given in this suit is that of the president of the building and loan association, who says that a conservative estimate of the value of the property in the fall of 1907 was $11,500. This would be about two thousand

dollars more than Helbig gave, and was about the amount fixed for the sale by Phillips, by the agreement of the Wagners in August, 1908. Helbig himself, however, swears that he offered the property for sale at $4,800, subject to the association mortgage, being about one thousand dollars over the amount he paid, but was not able to sell it. By reason of the peculiar situation of the parties in this case, in which McDermit was practically counsel for all the parties interested, while at the same time he was personally interested in protecting Helbig against the latter's endorsement on notes which had already been discounted to pay fees due or claimed to be due to himself, and on which he had received the proceeds, the burden is upon the grantee to establish clearly that the sale upon the part of the Wagners was for a fair and adequate consideration. This has not been done, and upon all the evidence in the case, I conclude that the deed to Helbig must be set aside, but upon the conditions of repaying to him the sums paid or obligations assumed as part of the consideration.

As against the defendant McDermit the right of the complainants to equitable relief against the inclusion of all the notes as part of the consideration of the sale, stands on a different basis. He was, at the time of obtaining the notes, and at the time of the conveyance by the Wagners, acting as their attorney, and under an agreement signed by himself as to the amount of his compensation for services rendered and to be rendered. The compensation under the agreement extended only to the $1,000 note signed by both the Wagners and the $600 note signed by the husband only, and these amounts, in connection with the $400 previously paid in cash, $2,000 in all, were under the agreement to "be in full for all services rendered or to be hereafter rendered on account of charges now pending against the said Wagners in any of the courts of this state, where it may require the undersigned to be present." The complainants' counsel claim that the evidence of the Wagners shows that the conveyance was made only for the purpose of securing McDermit as bail, but on this point I think the evidence of the attorney that it was to secure his fees as well is more reliable. Mrs. Wagner, moreover, says that the written agreement of November 7th, signed by McDermit and given to her husband, was received by her, and inasmuch as Mc-

Dermit did then undertake the services agreed upon, this agreement is the best evidence as to the object of the conveyance and the amount to be paid for all future services in connection with the pending charges. The first question on this branch of the case is whether either of the notes given by the husband to the attorney, subsequent to the agreement, are chargeable against Mrs. Wagner or her husband. The third note for $600 was given by Wagner January 2d, 1908, and at the time of receiving it, the attorney signed an agreement "that if Herman Wagner is convicted, I shall return one note of $600 of the three notes by him given to me." This agreement shows on its face that all of the three notes, including the last $600 note, were given to Mc-Dermit for services of some kind in connection with the charges against Herman Wagner. Considering all the circumstances existing at the time the contract was entered into, the agreed compensation was ample, and even liberal, and no facts have been shown entitling the attorney to any increase in the amount chargeable on the wife's lands. In the subsequent transactions between the attorney and his clients, this $600 therefore must be considered as a sum which cannot be allowed to the attorney. Nor do I think the $300 note subsequently given by Wagner can be allowed. McDermit says it was for money loaned to Wagner, while Wagner swears that he never received any money from him, but that he paid him money for the building and loan. That Mrs. Wagner had the money or derived any benefit from it, is not at all shown, and on the question as to McDermit charging the property of Mrs. Wagner conveyed to him as security, with debts of the husband other than those referred to in the agreement, evidence affecting Mrs. Wagner must be produced. These debts were practically additional debts claimed to be due to the attorney, as to which the attorney was interested adversely to Mrs. Wagner, in securing payment of them from her property; and inasmuch as he still continued to act and advise as her attorney in the matter of the sale to Helbig, the situation was one requiring the fullest disclosure and the utmost good faith, not only in reference to the existence of the claims, but their validity, and in reference to the attorney's right to charge her lands with these additional debts in his own favor, so that, if necessary, she

might procure other advice before satisfying the claims by a conveyance of her lands. If the statements of the Wagners are to be relied on, not only was no such opportunity given or suggested, but pressure for immediate sale was exercised as the only means of realizing anything.

My conclusion on the whole evidence relating to the transfer is, that the attorney has failed to establish that as against Mrs. Wagner these two notes of her husband amounting to $900, of which the attorney got the proceeds, were fairly included as part of the consideration she was to receive on the conveyance of her equity, and to that extent he is bound to reimburse her. As against the defendant McDermit, a decree will be advised for such reimbursement, either as a contribution toward the payment she is required to make as a condition of relief against Helbig, or as a payment to be made to her should she refuse or fail to perform these conditions.

The defendant Phillips, at the time of the quit-claim deed from the Wagners to Helbig, held the legal title to the property, and so long as he still continued to be bail for the Wagners, his retention of the title for his protection was proper. But the indictments against the Wagners were dismissed in May, 1909, and as he is not personally liable on the notes discounted by the trust company, and this company disclaims any interest in the lands, his only possible claim to hold the title, so far as appears by the evidence, is the liability upon the bond given for the Mooney claim, if the $75 due at the hearing is still unpaid. As this debt was for repairs on Mrs. Wagner's property, she should be charged with its payment as a condition of setting aside the deed to Phillips. As against the defendant Phillips, decree will be advised that upon such payment and upon the conveyance by Helbig, he also convey to Mrs. Wagner the lands in question. The mortgage to Clinton will be declared void and of no effect. The form of decree to be settled on notice.