112 N.J. Super. 296 (1970)
271 A.2d 12
SYDNEY KAPLAN AND HYMAN F. KAPLAN, PLAINTIFFS-RESPONDENTS,
v.
SLEEP E HOLLOW MOTEL CO., A LIMITED PARTNERSHIP, ET ALS., DEFENDANTS-APPELLANTS, AND SUPERIOR INVESTMENTS, INC., INTERVENOR-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1970.
Decided November 24, 1970.
*298 Before Judges GOLDMANN, LEONARD and MOUNTAIN.
Mr. Sam Weiss argued the cause for appellants (Messrs. Strong, Strong, Gavarny & Longhi, attorneys).
Mr. G. Henry Weston argued the cause for respondents Kaplan (Messrs. Weston and Kravitz, attorneys).
Mr. Seymour I. Marcus argued the cause for intervenor-respondent (Messrs. Levy, Levy, Albert & Marcus, attorneys).
The opinion of the court was delivered by GOLDMANN, P.J.A.D.
Defendant in foreclosure, Sleep E Hollow Motel Co. (Motel), applied to the Chancery Division for an order vacating the sheriff's sale and allowing it to redeem the property by payment of the mortgage, interest, fees and costs in full, on the grounds that "the sale was unconscionable and that the defendant was prevented from attending the said sale through misunderstanding and mistake and that the sale price for said premises was inadequate." On October 27, 1969 the Chancery judge entered an order dismissing the objections, confirming the sale and directing the sheriff to deliver a deed, but not before November 1, 1969. This appeal followed, accompanied by a motion that we stay the order. We denied the stay and directed the sheriff to immediately execute and deliver a proper deed upon receipt of the foreclosure sale bid price.
Motel, a limited partnership, executed a $300,000 real and chattel mortgage to plaintiffs Sydney and Hyman Kaplan on August 31, 1962. The mortgage being in default, plaintiffs instituted foreclosure proceedings on May 14, 1969 and moved for the appointment of an operating receiver. The *299 parties then entered into a stipulation and consent order whereby defendants agreed to pay the three quarters of taxes past due, the amount owing under a financing statement held by the Ewing Bank and Trust Company (some $9,500 and interest), the judgment held by the Rug Mart (about $20,000) and under which the sheriff had levied on certain Motel personal property, all overdue mortgage instalments plus interest, and a $1,500 fee to plaintiffs' attorney. Defendants consented to the appointment of plaintiff Sydney Kaplan as operating receiver to take charge of the assests of defendant World Wide Realty Associates, Inc., t/a Sleep E Hollow Motel Co. It was agreed that the mentioned payments were to be made no later than June 12, 1969; otherwise, Kaplan was authorized to enter into possession of the premises immediately as operating receiver. The stipulated payments were not made, with the result that final judgment in foreclosure was entered July 10, 1969. A writ of execution issued in due course to the Sheriff of Mercer County, who then proceeded to make his levy and advertise the sale of the premises to be held September 3, 1969.
On September 3, 1969 defendants orally applied to Judge Kingfield, then attending the Judicial Conference, for an adjournment. Based upon the representations of defendant Eoute, general partner of Motel, and his counsel, and also on Eoute's affidavit, the judge adjourned the sale until September 17. Eoute's affidavit stated that he had been making efforts to refinance the mortgage; that International Funding and Insurance Associates had granted Motel a mortgage commitment, which was not consummated; and that "I have now arranged for the refinancing of this mortgage by Republic Motel Corporation of America, 1328 Shunk Street, Philadelphia, Pennsylvania who plan to take over an assignment of Plaintiff's mortgage and to pay off Plaintiff in full * * *." Continuing, Eoute requested an adjournment of the sheriff's sale for at least one week and preferably two weeks to complete the refinancing.
*300 Moreover, on September 2, 1969 Motel's counsel had written the sheriff confirming the request he had made for a one-week postponement of the scheduled September 3 sale, "for the reason that John A. Eoute, one of the general partners of the defendant company, has arranged for the purchase of the mortgage to satisfy the claims of the plaintiffs."
On September 17, 1969 a further application for adjournment was made to Chancery Division Judge Fritz, based on affidavits of defendant Eoute and his counsel. Eoute stated that Republic Motel Corporation of America was definitely planning to purchase the mortgage and pay the foreclosure judgment in full, but its attorney, Barton Banks, said he needed about ten days to complete all details. Counsel's affidavit was to the same effect and requested a two-week adjournment. At the argument on adjournment defendants' attorney told Judge Fritz that "I have verified that it is a valid commitment. There is a contract." Banks had told him they would need ten days to finalize the matter. Judge Fritz granted a three-week adjournment of the sale to October 8, 1969, stating that "I am attaching the admonition of counsel [for plaintiffs] that there shall be no further adjournment. * * * It will take a clear and convincing demonstration of extraordinary and exigent circumstances for the defendants to obtain any relief beyond this."
The sheriff's sale took place on October 8, 1969, the premises being sold to Peter J. Bonanni, assignor of respondent Superior Investments, Inc., for $266,248.80. This was $100 higher than plaintiffs' bid, which was in the full amount due on the mortgage, interest, taxed costs and sheriff's fees. Although other persons had attended the sale, neither defendants nor anyone on their behalf was present.
Before the sheriff could execute and deliver his deed, defendants filed a notice of motion on October 20, 1969, returnable October 24, to set the sale aside and allow redemption. Plaintiffs' attorney moved ex parte to accelerate the hearing, *301 since the sheriff had set October 22 as the date for delivering his deed. Judge Fritz denied acceleration and put the matter down for argument on October 24, stating, "I will entertain no motion for an adjournment short of the death of counsel." Plaintiffs' attorney insisted that he would have to have a certified check in full on the 24th. Defendants' attorney assured the judge that he would not return to court on that day without a certified check in his hands.
At the very start of the hearing on October 24 Judge Fritz inquired of defendants' counsel whether he had the certified check, reminding him of the promise he had made a few days before. Counsel admitted he had no funds with him but was prepared to deposit $5,000. In the course of the argument he said that "we can get a mortgage commitment of $150,000 and could pay cash of $100,000; that's $250,000." Then, and for the first time, he argued that the mortgagors were entitled to a credit against the judgment for funds in the hands of the receiver as a result of his operating the motel since June. He repeatedly stated that the receiver had taken in $50,000.
Neither on October 24 nor on the continued date of the argument on October 27 did counsel present any proof of a binding mortgage commitment of $150,000 or that $100,000 was in hand and immediately available. Moreover, the $50,000 figure referred to by counsel was without foundation, plaintiffs' attorney representing that an audit of the books over the past weekend showed a net profit to October 24 of only $20,775.50, before receiver's expenses and fees.
Judge Fritz made extensive findings of fact and concluded that the real estate had been sold at its highest and best price, the money needed for redemption was not available at that time, there were no equities in defendants' favor, they were too late in demanding an accounting, and since plaintiffs were not mortgagees in possession defendants were not entitled to an accounting until the completion of the receiver's duties. He then entered the order here under appeal.
*302 We observe that on January 7, 1970, the return day of an order to show cause why the operating receiver's account should not be allowed, Judge Fritz, having heard the argument of counsel, found that the accounting procedure employed was proper and sufficient, the account in "meticulous shape" and that the receiver's services were extensive and necessary. Accordingly, he approved and allowed the account, which showed a balance of $19,610.02, and granted the receiver an allowance of $6,450, the balance, net of that allowance and fees, to be paid to the Superior Court Clerk.
Defendants have never contended that the sheriff's sale was not in all respects legal and proper. We observe that the $266,248.80 bid of Bonanni was subject to an announcement made at the sheriff's sale by which the purchaser became liable to pay certain obligations in addition to the bid: overdue real estate taxes of about $9,500, the $9,500 interest due on the financing statement held by the Ewing Bank and Trust Company, plus interest, and the Rug Mart judgment of some $20,000 on which the sheriff had levied. Although Motel, in its notice of motion to set aside the sheriff's sale and to redeem the property, gave as reasons that the sale was unconscionable, that Motel was prevented from attending the sale through misunderstanding and mistake, and the sale price was inadequate, we find no basis whatever in the record for these claims. The sale was not unconscionable, nothing prevented Motel from attending the sale, and the property was sold at its highest and best price in the circumstances. We therefore conclude that there was no legal or equitable ground upon which the Chancery Division judge could possibly have based a determination invalidating the sheriff's sale.
Redemption under a mortgage is a favored right in equity. Hardyston Nat'l Bank of Hamburg, New Jersey v. Tartamella, 56 N.J. 508, 513 (1970). As the Chief Justice there pointed out, our prior decisions were in conflict as to whether the right to redeem was cut off by a judicial sale or persisted until confirmation. Hardyston settled the matter *303 by concluding that "the just course is to permit the mortgagor to redeem within the ten-day period fixed by R. 4:65-5 for objections to the sale and until an order confirming the sale if objections are filed under the rule."
The facts of this case establish no equitable basis upon which redemption could have been allowed. Motel had for some time, even preceding the bringing of the foreclosure action, unsuccessfully attempted refinancing. The attempt to get an open-end first mortgage loan from International Funding and Insurance Associates had fallen through in July 1969. Meanwhile, and in order to gain time, defendants entered into the stipulation and consent order of June 9, 1969 agreeing to the appointment of an operating receiver who was to take possession if past due taxes, the Ewing bank and Rug Mart obligations, and overdue mortgage installments plus a counsel fee, were not paid by June 12  an undertaking which, as noted above, Motel was unable to meet. A new source of possible refinancing was allegedly found in Philadelphia through Republic Motel Corporation of America, represented by Barton Banks. Attached to the affidavit filed by general partner Eoute in support of the motion to set aside the sheriff's sale and to redeem was a purported agreement dated September 9, 1969 between Republic Motel Corporation of America and Motel granting Republic an option to buy the motel property for $400,000 within 90 days of the sheriff's sale, both real and personal property to be free of all liens and encumbrances, Republic to obtain an assignment of the mortgage and postponement of the pending sale. The agreement was signed by Eoute as Motel's general partner and on behalf of World Wide Realty Associates, Inc. The signature for Republic Motel Corporation is illegible. Barton Banks filed an affidavit with the court stating that he had examined the alleged agreement; that there was no such corporation as Republic Motel Corporation of America; that he had reserved the name Republic Motel Corporation of America with the Secretary of the Commonwealth of Pennsylvania, but no corporate certificate was ever *304 filed and he was the only owner of the name; that only he could sign for the de facto corporation; that he examined the signature on the agreement and it was not his, and no one had authority to sign it.
The judges who adjourned the sheriff's sale from September 3 to September 17, and again to October 8, 1969, relied upon the repeated representations of Eoute and Motel's counsel that they had a firm commitment for refinancing. The refinancing never came to pass.
Finally, at the time of the arguments on October 24 and 27 in connection with the motion to vacate the sale and redeem, all that defendants were able to produce was the $5,000 check, despite the firm promise of counsel that he would not appear unless he had the full amount in hand. The most he could give the judge by way of reassurance was that he could manage $100,000 cash and a mortgage for $150,000. This was nothing more than a qualified redemption, and an insubstantial one on its face in light of what the judge knew of the fruitless attempts to refinance over the preceding months.
The argument that the mortgagor was entitled to have a credit for the monies in the receiver's hands was a last-minute claim. It had never before been asserted  not in the motion to set the sale aside and redeem, or otherwise. An operating receiver appointed in foreclosure proceedings holds the property as an arm of the court for the benefit of all parties to the action. His position is not that of the mortgagee; rather, he stands in the shoes of the mortgagor. Equitable Life Assurance Society of United States v. Patzowsky, 122 N.J.L. 482, 484 (E. & A. 1939). His duty is to manage the property to the best advantage, and eventually to account to the court, as was done here. The fund collected by the receiver is held by him until the determination of the litigation, when it will be ordered distributed after approval of his account and the payment of allowances. The net avails will be distributed to those parties-encumbrancers who have established that the foreclosure sale resulted in a *305 deficiency, in the order of their priority. Any surplus remaining will then be paid to the mortgagor. See N.J. Title Guarantee and Trust Co. v. Cone & Co., 64 N.J. Eq. 45 (Ch. 1902); cf. Last v. Winkel, 86 N.J. Eq. 356 (Ch. 1916), aff'd o.b. ibid. 431.
In summary, we hold that the sale was valid in all respects, that defendants did not make an unqualified tender of the amount due by way of redemption, and that their belated demand for an accounting by the receiver not only came too late, but would not have changed their redemption offer into a fully qualified one. We perceive no equity that would stand in their favor.
Affirmed.