832 A.2d 369

MERCURY CAPITAL CORP., A NEW YORK CORPORATION, PLAINTIFF, v. FREEHOLD OFFICE PARK, LTD., A NEW JERSEY LIMITED PARTNERSHIP, DEFENDANT.

Superior Court of New Jersey
Chancery Division Monmouth County

Decided March 26, 2003.[1]

---

[1] Opinion Amended July 7, 2003.

236

*Jack Zakim*, for plaintiff Mercury Capital Corp. (*Kleeblatt, Galler, Abramson & Zakim,* attorneys).

*M. Wilson*, for defendant (*Nowell Amoroso Klein Bierman, P.A.,* attorneys).

FISHER, P.J.Ch.

Twenty-two days after a sheriff's sale, defendant Freehold Office Park, Ltd.'s ("the mortgagor") attempted to redeem the mortgaged property. Even though the sheriff had not yet delivered the deed, the mortgagor's attempt to redeem was refused by the sheriff because more than ten days had elapsed from the sale. The mortgagor immediately sought a temporary restraining order preventing the sheriff's transfer of the deed to plaintiff Mercury Capital Corp. ("mortgagee"), the successful bidder. Because of the emergent nature of the situation, and after hearing the argument of both counsel, the court immediately entered the temporary restraining order and now considers whether those restraints should continue, whether the mortgagor has a valid objection to the sale, and whether the mortgagor still possessed a right of redemption twenty-two days after the sale but prior to the sheriff's delivery of the deed.

The circumstances surrounding the present application are not in dispute. The mortgagee obtained a judgment of foreclosure on April 15, 2002. A sheriff's sale was conducted on February 24, 2003; the mortgagee was the successful bidder. The following ten days passed quietly. However, on March 18, 2003, as the sheriff made arrangements to deliver a deed to the mortgagee, the

mortgagor allegedly presented to the sheriff's office funds sufficient to redeem. The sheriff refused to accept this offer of redemption, causing the mortgagor to make an immediate application objecting to the sale and seeking a restraint on the tendering of the deed to the mortgagee.

After hearing argument in the afternoon of March 18, 2003, the court entered the order to show cause and immediately restrained the sheriff from tendering the deed pending further order, for reasons expressed in a cursory letter opinion later that day. Now that both parties have had an opportunity to more fully consider and present their legal arguments concerning these events, the court now also has the opportunity to more fully expound on its earlier decision and to frame the issues for further proceedings.

The procedural questions raised in opposition center around *R*.4:65–5. The mortgagee contends that (a) the failure of a mortgagor to redeem or file a motion objecting to the sale within ten days of the sale terminates both the right of redemption and the right to object to the sale, (b) even if the application was timely, the mortgagor has not stated a valid objection or did not properly attempt to redeem, and (c) any right which the mortgagor might now continue to possess was bargained away as part of an earlier settlement agreement.

The mortgagee's initial ground for attack requires a consideration of the applicable rule as well as the particular events which occurred after the sheriff's sale. As indicated earlier, the mortgagee contends that the mortgagor's rights terminated, as a matter of law, when the tenth day following the sheriff's sale ended. However, the language of *R*.4:65–5 unquestionably indicates that the right to object is not finally terminated until the sheriff delivers a deed to the successful bidder:

A sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served within 10 days after the sale *or at any time thereafter before the delivery of the conveyance.* Notice of the motion shall be given to all persons in interest, and the motion shall be made returnable not later than 20 days after the sale, unless the court otherwise orders. On the motion, the

court may summarily dispose of the objection; and if it approves the sale and is satisfied that the real estate was sold at its highest and best price at the time of the sale, it may confirm the sale as valid and effectual and direct the sheriff to deliver a conveyance as aforesaid.

[emphasis added]

While the rule seems sufficiently understandable and, on its face, supportive of the mortgagor's position, the mortgagee contends that a different approach has been employed by our courts.[2]

Certainly, there is no question but that, during the ten days following a sheriff's sale, and without the need for court approval, the mortgagor "has an absolute right to redeem the property by tendering the full amount due on the mortgage." *Brookshire Equities v. Montaquiza,* 346 *N.J.Super.* 310, 315, 787 *A.*2d 942, 945 (App.Div.), *certif. denied,* 172 *N.J.* 179, 796 *A.*2d 895 (2002), citing *Hardyston,* 56 *N.J.* at 513, 267 *A.*2d at 497–98. *R.*4:65–5 acknowledges and expressly provides for an additional procedure by which a mortgagor may interpose an objection to a sheriff's sale within ten days following the sale or "at any time thereafter before the delivery of the conveyance." This rule places the onus on the mortgagor "of going forward" by obviating the need for a formal confirmation order unless an objection was made to the sale. *Hardyston,* 56 *N.J.* at 511, 267 *A.*2d at 496.

The question initially raised is whether the opportunity to object is expanded until such time as the sheriff delivers the deed or whether it automatically terminates with the passage of ten days. The plain language of the rule demonstrates that the right continues until the deed is delivered. To adopt the mortgagee's suggested meaning of the rule requires the elimination or disregarding of an entire phrase of the rule (*i.e.,* "or at any time thereafter

---

[2] It is also interesting to observe that the language in question can be found in the text of the rule as it existed as far back as 1948. *See, Hardyston National Bank v. Tartamella,* 56 *N.J.* 508, 511, 267 *A.*2d 495, 496 (1970) ("1948 *Rule* 3:77–5 (now *R.*4:65–5) provided that the sheriff shall deliver the deed 'in pursuance of the sale, unless a motion for the hearing of an objection to the sale is served upon him within 10 days of the sale or at any time thereafter before the delivery of the conveyance' ").

before the delivery of the conveyance"). This court is not prepared to conclude that in adopting this rule, the Supreme Court meant to include meaningless language the only purpose of which would be to confuse future courts, sheriffs, lawyers, bidders at sheriff's sales, and other litigants. Such rules are adopted with great care[3] and a court called upon to apply these rules should not leap to the conclusion, suggested by the mortgagee, that this phrase is superfluous let alone inconsistent with common practice.

Much of the focus in the parties' written and oral arguments has been on *Hardyston.* Indeed, *Hardyston* is important, not because it deals with the precise issue raised herein (it does so only indirectly), but because it represents the Court's explanation of the rule and provides insight into the Court's weighing of the various competing policies in the "post-sale, pre-deed delivery" stage of a foreclosure action. So that, while one trial court may have accurately referred to some of Chief Justice Weintraub's statements in *Hardyston* as *dictum,*[4] the casual dismissal of those statements constitutes an unwarranted understatement of *Hardyston's* importance. In *R.*4:65–5 we have the Supreme Court's view of the matter through its rule-making capacity and in *Hardyston* we have the Court's general observations in the context of a real case. Both those statements are entitled to considerable respect and great weight, and should not be so readily dismissed as superfluous or mere *dictum.*

*Hardyston* determined that the "ultimate question is one of policy," that the right of redemption is an equitable remedy devised to protect a mortgagor from the forfeiture of his title, and for that reason is a "favored right." 56 *N.J.* at 513, 267 *A.*2d at 497, citing *Mansfield v. Hammond,* 117 *N.J.Eq.* 509, 510, 176 *A.* 354, 355 (E. & A.1935). As a result, the Court announced that the

---

[3] *See, e.g., Stewart Title Guar. Co. v. Lewis,* 347 *N.J.Super.* 127, 134, 788 *A.*2d 941, 945 (Ch.Div.2001).

[4] *See, East Jersey Sav. & Loan v. Shatto,* 226 *N.J.Super.* 473, 479–82, 544 *A.*2d 899, 902–03 (Ch.Div.1987).

right of redemption exists until the expiration of the rule's ten-day period and, if an objection is filed, the right of redemption is expanded until the entry of an order confirming the sale. 56 *N.J.* at 513, 267 *A.*2d at 497. In short, *Hardyston* stands for the proposition that the duration of the right of redemption coincides with the duration of the rule-based right to object to a sheriff's sale.

The issue which *Hardyston* did not comment upon, but which is presented here, is whether the right to object (and, thus, the right of redemption) extends beyond the ten-day period *if the sheriff has not delivered the deed.* The mortgagee contends that *Shatto* is conclusive on the subject, but a motion containing objections in that case was filed nine days after the sheriff's sale; accordingly, *Shatto* did not deal with this precise situation. Moreover, *Shatto* recognized that *Hardyston* concluded that "delivery of the deed ... became the final cut-off of the right of redemption—and still is" and that the *"ten-day period was a minimum* because the motion could still be filed thereafter so long as the sheriff had not delivered his deed." 226 *N.J.Super.* at 480, 544 *A.*2d at 902–03 (emphasis added). Other courts have also similarly commented upon the matter, although in distinguishable circumstances. *See, Sovereign Bank, FSB v. Kuelzow,* 297 *N.J.Super.* 187, 196, 687 *A.*2d 1039, 1043 (App.Div.1997) (emphasis added) ("[t]he foreclosure action, although already the subject of a judgment, is not totally concluded until the defendants' equity of redemption is cut off *by the delivery of the sheriff's deed*"); *Leisuretowne Ass'n, Inc. v. McCarthy,* 193 *N.J.Super.* 494, 502, 475 *A.*2d 62, 66 (App.Div. 1984) (emphasis added) ("[a]lthough the judgment appealed from provides for the debarring and foreclosing of defendants' 'equity of redemption in and to said liened premises' when the property is sold pursuant to the judgment, defendant should understand that, if they pay the disputed sum ... *prior to the delivery of the sheriff's deed,* the matter would be dismissed"); *Kaplan v. Sleep E Hollow Motel Co.,* 112 *N.J.Super.* 296, 302–03, 271 *A.*2d 12, 15 (App.Div.1970) ("As the Chief Justice ... pointed out, our prior decisions were in conflict as to whether the right to redeem was

cut off by a judicial sale or persisted until confirmation. *Hardyston* settled the matter [in favor of the latter approach]").

The most recent pronouncement from the Appellate Division in this regard was not cited by either party. In *Brookshire, supra,* 346 *N.J.Super.* 310, 787 *A.*2d 942, the court considered the impact of a bankruptcy filing eight days after a sheriff's sale. This filing greatly delayed the delivery of the sheriff's deed but eventually the mortgagee was permitted to proceed with its foreclosure action. Before the deed was delivered, but well after the passage of the initial ten days, the mortgagor attempted to redeem and filed a motion objecting to the sale. In summarizing the respective rights of the parties in such circumstances, the court first stated in language which would support the mortgagee's contention herein:

> Appellants correctly note that the elimination of the motion to confirm the sheriff's sale does not eliminate the right to redeem under the rules, but they mistakenly argue that there is an absolute right to redeem at any time prior to confirmation if an objection is filed. *The rule does extend the period wherein redemption may occur. However, a prerequisite of this extension is the filing of an objection within the ten-day period allowed by the rule.*
>
> [346 *N.J.Super.* at 316, 787 *A.*2d at 945 (citations omitted; emphasis added)]

If the Appellate Division had stopped there, the mortgagee might be well within its rights to argue that *stare decisis* would bind this court to conclude that the right of redemption and the right to object to the sale terminate upon the failure of a mortgagor to redeem or object within the ten-day period, notwithstanding *R.*4:65–5's unambiguous language to the contrary. But the *Brookshire* court went on to acknowledge that a "mortgagor has also been allowed to file an objection under *R.*4:65–5 after the ten-day period and before conveyance of the deed," so long as there is some "valid ground for objection." 346 *N.J.Super.* at 317, 787 *A.*2d at 946. As a result of these additional comments, the clarity of the earlier language about the "prerequisite" of an objection within the ten-day period evaporates.

■ In general, these authorities have determined that the right of redemption persists so long as the right to object exists

and both these rights co-exist so long as the sheriff has not delivered the deed to the purchaser. The ten-day period represents a time frame within which the sheriff *cannot* deliver the deed and within which the mortgagor may redeem the property *notwithstanding the absence of an objection* to the sheriff's sale. Once ten days elapse, the sheriff's obligation to tender the deed is unfettered unless a motion objecting to the sale is filed in the interim; in this way, after the passage of ten days, the burden of interrupting the post-sale process falls upon the mortgagor. That is what the rule expressly states and that is entirely consistent with the policy considerations announced by Chief Justice Weintraub in *Hardyston.* Until the rule is changed, no different conclusion is warranted. Accordingly, the court rejects the mortgagee's contention that the mortgagor could neither redeem the property nor assert an objection twenty-two days after the sale. So long as the deed was not delivered—and it is conceded that it was not delivered by that time—the mortgagor could both redeem the property or pose objections to the sale.

In this case, the mortgagor attempted to both redeem and, when rebuffed, objected to the sheriff's sale. It is asserted, although disputed by the mortgagee, that the mortgagor actually presented the sheriff with funds in excess of the redemption amount. According to the mortgagor, the sheriff refused to accept the proffered funds. After being refused in its attempt to redeem, the mortgagor presented its proposed order to show cause to this court, seeking not only a restraint against the sheriff's delivery of a deed, but also a hearing on its objection to the sheriff's sale.

As set forth above, as of March 18, 2003, it was not too late for the mortgagor to either redeem the property or to file an application objecting to the sheriff's sale. The question persists, however, as to whether the mortgagor effectively did either thing.

Without any sworn statements of its own,[5] the mortgagee nevertheless contends that the mortgagor failed to demonstrate that it took the appropriate steps to redeem the property. The only sworn statement provided in this regard is that of an attorney representing the mortgagor who certified that

> At 9:00 a.m. on Tuesday, March 18, 2003, I arrived at the Monmouth County Sheriff's Office, and confirmed that the Deed had not been delivered by the Sheriff. I thereupon tendered a draft in the amount of $4,821,606.48 to a Sheriff's Deputy who refused to give me her name.
>
> The Monmouth County Sheriff's Office refused the tender of the redemption amount, and advised that the deed was going to be delivered today.

The mortgagee contends it is unclear whether the "draft" referred to in the certification constituted certified funds. In open court, on the return date of the order to show cause, the mortgagor's attorney exhibited two bank checks—one in the amount of $1,615,000 and the other $3,235,000; whether these were the checks provided to the sheriff on March 18, 2003, however, is disputed since the moving certification referred to one draft, not two, and also stated that the draft was in the amount of $4,821,606.48, which is also inconsistent with what was later argued.[6] There, thus, appears to be a factual dispute as to whether redemption was actually offered or unqualifiedly presented.

■ In addition, the mortgagee contends that the turnover of sufficient funds to the sheriff was not the proper mode of redeeming property. The mortgagee has referred to no legal authority which would support that contention other than the learned treatise contained in the *New Jersey Practice* series, where it is stated that the "proper procedure to be used for a redemption" after the

---

[5] The mortgagee has only provided a brief in opposition to the order to show cause and even that is not signed. No opposing certification or affidavit was submitted.

[6] The amount allegedly provided, assuming it consisted of certified funds, was admittedly sufficient. On March 18, 2003, the amount required to redeem was $4,821,606.48. The moving certification states that this precise amount was tendered to the sheriff, while the checks exhibited by counsel for the mortgagor in open court on March 24, 2003 amounted to $4,850,000.

sheriff's sale "is to deposit the full judgment amount, with interest, taxed costs and sheriff's fees with the clerk of the court, and proceed before the vicinage chancery judge, either by order to show cause with temporary restraints or motion, on notice to all parties in interest including the mortgagors." Weinstein, "Law of Mortgages," 30 *New Jersey Practice* § 20.9 at page 38. The mortgagee greatly relies upon this authoritative work and this particular statement, but it is noteworthy that Mr. Weinstein therein speaks only of the "proper procedure" not a "legally mandated procedure." That Mr. Weinstein did not appear to convey that the depositing of the redemption amount with the clerk of the court constitutes the *only* post-sale manner in which redemption may occur is demonstrated by his comments a few short sentences earlier in his treatise:

> Redemption should not be made to the sheriff after the sale. However, if the full judgment amount, interest, taxed costs and sheriff's fees are tendered to the sheriff after sale and accepted by the sheriff, *redemption in this instance would not be erroneous.* [*Id.* at page 37 (emphasis added)]

Considering that the right of redemption is an equitable remedy to be construed in favor of the mortgagor, *see, Hardyston,* 56 *N.J.* at 513, 267 *A.*2d at 497, it would be wholly inequitable—if the mortgagor did unqualifiedly present to the sheriff an appropriate amount—to bar redemption because the mortgagor did not exercise the alleged preferred method of depositing the money with the clerk of the court.

Accordingly, while the court finds no defect in the attempt to redeem based upon presentment of the funds to the sheriff, the court finds there are factual questions as to whether the mortgagor's representative presented—without qualification—certified funds, sufficient in amount, on March 18, 2003. If the mortgagor did in fact do so, then redemption should have been permitted. And, because the sheriff refused to permit redemption and indicated an intention to forthwith deliver the deed to the mortgagee, an appropriate equitable remedy was warranted.[7]

---

[7] After the rulings set forth herein, the court conducted a plenary hearing and concluded from the evidence presented that the mortgagor did in fact present to

The mortgagee argues that the ability to redeem pivots upon the court's ultimate ruling on the sufficiency of the mortgagor's objection to the sale. The only support for this is perhaps *Brookshire, supra,* 346 *N.J.Super.* 310, 787 *A.*2d 942, an appellate decision discussed earlier, and *Shatto,* 226 *N.J.Super.* 473, 544 *A.*2d 899, a highly controversial trial court decision.

In *Shatto,* the court repeatedly acknowledged that the right to redeem exists "for at least ten days after the sale, and, beyond that, *until the deed was actually delivered."* 226 *N.J.Super.* at 481, 544 *A.*2d at 903 (emphasis added). *Shatto* also recognized that the *Hardyston* holding required, once an objection was lodged, that the right of redemption continue to be available until a ruling on the objection. However, the experienced trial judge in that case expressed concern that this "time-out" between a timely motion and a ruling on the objection would "open the floodgates of similar motions in other foreclosures for purposes which the equitable remedy was never intended to protect." *Id.* at 481, 544 *A.*2d at 903. In order to protect against such "mischievous interference" with these procedures, *Shatto* held that the right of redemption after the motion is filed may only be exercised if there is merit to the objection. In other words, while *Hardyston* requires the "time-out" between motion and the court's ruling on the motion, according to *Shatto* the "time-out" should not inure to the mortgagor's benefit unless the objection to the sale is sustained.

It is fair to say that *Shatto* is not based upon any prior precedent of our courts or upon the language of *R.*4:65–5 but upon the trial court's own policy determination rendered in order to stem an anticipated tide of a "floodgate" of similar "mischievous" motions. Certainly the experienced trial judge's view of the matter in *Shatto* warrants careful consideration. But history has

---

the sheriff's office sufficient certified funds to redeem but was rebuffed by the sheriff's office only because ten days had already elapsed since the sale. The court found the sheriff's basis for rejecting the right of redemption to be erroneous and, as a result, redemption was permitted.

demonstrated that this view did not generate any amendment to R.4:65–5 and has not since been followed by our courts. It has also been criticized by the treatise upon which the mortgagee places much of its reliance. Mr. Weinstein's treatise referred to the "post-sale redemption right as outlined in *Shatto*" to be "somewhat contradictory" and expressed concern over *Shatto*'s failure to mention *Kaplan v. Sleep E Hollow*,[8] wherein "the defendants' conduct ... was no less egregious than the conduct in *Shatto* and perhaps even more so." As a result, Mr. Weinstein concluded that *Shatto* "cannot be considered the last word on this subject." Weinstein, *supra*, § 20.9 at 40–41 and 41 n. 20.

That *Shatto*'s interpretation of the rule and its "clarification" of *Hardyston* cannot be considered as accurately stating the present status of the law in New Jersey is perhaps best exemplified by the fact that in the 15 years since *Shatto* was decided, it has only been cited once by our courts and then only in dissent. *See, Summit Bank v. Thiel*, 325 *N.J.Super.* 532, 542, 740 *A.*2d 140, 145 (App. Div.1998) (Wefing, J.A.D., dissenting), *affirmed as modified*, 162 *N.J.* 51, 740 *A.*2d 139 (1999). Indeed, the opportunity for the Appellate Division to comment upon the propriety of *Shatto*'s policy decision was certainly presented in *Brookshire*. There, as noted above, the Appellate Division observed that a mortgagor may file an objection to the sale "after the ten-day period and before conveyance of the deed," but never said that the right of redemption did not continue until rejection of the objection or otherwise suggest that the sufficiency of the objection was determinative of the validity of any attempt to redeem during that "time-out" period. In fact, *Shatto* went unmentioned by the Appellate Division therein or in any of the other post-*Shatto* decisions in this area, except the inapposite mention in Judge Wefing's dissent in *Thiel*. As a result, it may be fair to conclude that *Shatto*'s holding that the right of redemption is tied to the sufficiency of the post-sale objection is not consistent with *Hardy-*

---

8 112 *N.J.Super.* 296, 271 *A.*2d 12 (App.Div.1970), *certif. denied*, 57 *N.J.* 435, 273 *A.*2d 62 (1971).

*ston* and does not constitute an accurate statement of New Jersey law. Justice Holmes once said that "the life of the law ... has been experience." Holmes, *The Common Law* (1881) at page 1. Our courts' experience with *Shatto* has been to largely ignore it.

Notwithstanding, the mortgagee's contention that the objection posed is insufficient as a matter of law is erroneous. In the mortgagee's view, the mortgagor has not argued that the "manner" of the conducting of the sale was improper but only that the sale has reaped a purchase price below fair market value. That description is accurate but it does not render the objection inapposite. The mortgagee's argument that this is not the type of objection envisioned by *R.*4:65–5, in fact, is greatly mistaken. *See, Brookshire, supra,* 346 *N.J.Super.* at 317, 787 *A.*2d at 946 (one of the objections which a court may consider on a motion based on *R.*4:65–5 is "that the price paid by the buyer at the sheriff's sale is below fair market value"); *Citibank, N.A. v. Errico,* 251 *N.J.Super.* 236, 597 *A.*2d 1091 (App.Div.1991). In fact, the applicable rule specifically enumerates the insufficiency of the highest bid as a ground of objection. *See, R.*4:65–5 (emphasis added) ("On the motion, the court may summarily dispose of the objection; and if it approves the sale *and is satisfied that the real estate was sold at its highest and best price at the time of the sale,* it may confirm the sale as valid"). The mortgagor relies upon a recent appraisal which suggests that the fair market value of this property is in excess of $8,000,000 as compared to a sale price under $5,000,000. If these facts are ultimately found accurate,[9] then the court would be empowered to set aside the sale on equitable grounds which, if so held, would also keep open (even if the *Shatto* holding were to be followed) the right of redemption.

■ The mortgagee also argues that the mortgagor bargained away the rights it now seeks to vindicate. It has been shown that

---

[9] The court, in the later plenary hearing, heard such evidence but did not reach this issue. Instead, it was found that the mortgagor should have been permitted to redeem on March 18, 2003 and, thus, should not have been put to the task of objecting to the sale's results.

the parties entered into an agreement on December 16, 2002 whereby the mortgagor agreed to

> dismiss its answer and 21 separate affirmative defenses filed in the foreclosure action with prejudice and dismiss its appeal filed in the Superior Court of New Jersey Appellate Division with prejudice and enter into a consent order, at [mortgagee's] election to bar any further applications to any court of competent jurisdiction for *any stay relief* from [the] foreclosure judgment of any nature or kind including but not limited to a postponement of any foreclosure sale other than as agreed to herein, and/or challenging *the manner* in which the foreclosure sale is conducted pursuant to Rule 4:65-5 or under any other authority, and/or *to extend* the statutory time period for [mortgagor] to redeem its property subsequent to a foreclosure sale.

Because of the compound nature of this sentence, interpretation is required. It has been persuasively argued that the mortgagor agreed only to (a) dismiss its answer, (b) dismiss its appeal, and (c) enter into a consent order thereafter described. As a result, the question of whether the mortgagor's attempts to redeem or object to the sale are governed by the December 23, 2002 consent order. This order, standing alone, does not support the present contention, since the order states in relevant part only that the mortgagor "is barred from any future application *for stay relief* in this case from this court or any court of competent jurisdiction" (emphasis added). The express terms of the order do not support a contention that the mortgagor was thereby precluded from redeeming the property in accordance with our court rules or even from objecting to a later sheriff's sale, but only from seeking a stay of a future sheriff's sale or a stay pending appeal.

Moreover, the settlement agreement itself does not appear to suggest that the mortgagor was giving up its right to redeem pursuant to applicable legal authority. Instead, at best, the mortgagor only agreed to not seek "any stay relief," or request a "postponement of any foreclosure sale," or challenge "the manner in which the foreclosure sale is conducted," or seek to "extend the statutory time period" for redemption "subsequent to a foreclosure sale." No stay has been sought and no postponement of the sheriff's sale was requested. While the foreclosure sale has been challenged, it has not been challenged because of "the manner" in which it was conducted but only because of the purchase price

obtained. In addition, it cannot be said that by way of the present proceedings the mortgagor is attempting to *extend* the time for redemption; rather, the mortgagor is attempting to redeem *within* the time period permitted by *R.*4:65–5 for redemption. And, while the motion objecting to the sheriff's sale, based upon the alleged failure to obtain a purchase price substantially close to the property's fair market value, has the collateral effect of stretching the time for redemption, it arguably does not seek to "extend" that right beyond the rule's scope.[10]

To the extent the mortgagee may argue that the agreement has a greater scope than suggested above, then yet another issue has been raised for resolution at the aforementioned hearing. That is, if the mortgagee believes it gained greater rights than specifically spelled out in the settlement agreement, the court would conclude that the agreement in this regard is ambiguous and parol evidence may be offered to explain what the parties intended to agree upon. Indeed, as discussed momentarily, its ambiguity may be enough to prevent its enforcement.[11]

█ Lastly, the court, in its earlier opinion, observed that *Hardyston* held the right of redemption "may not be released in the mortgage itself or in a contemporaneous agreement." 56 *N.J.*

---

[10] This conclusion is not the product of some word game. The right to redeem can be asserted even after the delivery of a deed in certain circumstances, such as the mortgagor not having sufficient notice of the proceedings. *See, e.g., Orange Land Company v. Bender,* 96 *N.J.Super.* 158, 164, 232 *A.2d* 679, 682 (App.Div.1967); *Union Cty. Savings Bank v. Johnson,* 210 *N.J.Super.* 589, 510 *A.2d* 288 (Ch.Div.1986). It is more logical to interpret the loose language of this settlement agreement as precluding an application to extend the right of redemption beyond the terms of the rule and not as an attempt to redeem within the time frame set forth in *R.*4:65–5 (which would encompass any time up until delivery of the deed).

[11] The court also heard testimony on these issues at the plenary hearing later conducted but did not make any findings in this regard because of the holding that the right of redemption persisted notwithstanding and had been effectively met when mortgagor's counsel presented certified funds to the sheriff on March 18, 2003.

at 513, 267 *A*.2d at 497, citing *Dorman v. Fisher*, 31 *N.J.* 13, 15, 155 *A*.2d 11, 21–13 (1959). As a result, this court then rhetorically questioned whether the settlement agreement might similarly be avoided in the present circumstances. In response, the mortgagee contends that *Hardyston* applies only to a release of the right of redemption in the *mortgage instrument itself* or by way of an agreement reached *at the inception of the mortgage*. The mortgagee appears correct in this regard, but it should be observed that a later agreement to extinguish or limit the right of redemption will be closely examined to be certain that it was freely, fairly and voluntarily entered into. As Professor Pomeroy summarized:

> The mortgagor may, at any time after the execution of the mortgage, by a separate and distinct transaction, sell or release his equity of redemption to the mortgagee. This is a transaction, however, which a court of equity will examine strictly, in order to be satisfied that it is a perfectly fair and independent proceeding, entirely unconnected with the original contract of mortgage. [4 Pomeroy, *Equity Jurisprudence* (5th ed., 1941), § 1193 at 571–73]

*See also, McKlosky v. Kobylarz*, 99 *N.J.Eq.* 202, 132 *A*. 497 (Ch.1926); *Wagner v. Phillips*, 78 *N.J.Eq.* 33, 78 *A*. 806 (Ch.1911). Whether this settlement agreement should or should not be enforced on such grounds cannot be said on this record. This is yet another issue which may be explored at the plenary hearing.[12]

For the foregoing reasons, the restraints preventing the sheriff from delivering the deed will continue until the conducting of the plenary hearing referred to herein.

---

[12] *See*, n. 11, *supra*.